## REID *v.* HARMON.

NEGLIGENCE — TURNTABLES — CONTRIBUTORY NEGLIGENCE — TRESPASSERS.

> A child of eleven years of age fatally injured while playing with other children on defendant's turntable, knowing the danger, trespassing on private property, and hurt after removing a plate or fastening in order to set the turntable in motion, is governed by the rule precluding recovery, although a private road which did not affect the deceased's conduct ran near the structure and a street was not over 36 feet away.[1]

Error to Van Buren; Des Voignes, J. Submitted February 15, 1910. ( Docket No. 174.) Decided April 1, 1910.

Case by David Reid, administrator of the estate of Florence Reid, deceased, against Judson Harmon, receiver of the Pere Marquette Railroad Company, for the negligent killing of plaintiff's intestate. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Affirmed.

*Samuel H. Kelley* and *Thomas J. Cavanaugh*, for appellant.

*McPherson, Bills & Streeter*, for appellee.

Plaintiff's intestate, a child 11 years of age, was injured May 8, 1906, while playing with other children in moving and riding upon a railroad turntable. Death resulted from her injuries, but not immediately. The negligence of defendant which is alleged is a breach of the duty to safely guard, inclose, and lock or otherwise fasten and

---

[1] As to liability of railroad companies for injury to children playing on turntables, see notes to *Pannill* v. *Railroad Co.* (Va.), 4 L. R. A. (N. S.) 80; *Conrad* v. *Railroad Co.* (W. Va.), 16 L. R. A. (N. S.) 1129.

keep fastened the said table, when not in use by defendant. This duty, it is alleged, arises out of certain facts, stated in the declaration, in substance, as follows: The turntable is adjacent to two certain public streets in the city of South Haven and partly in a roadway used by the public, in plain view of persons passing upon either of the said highways and the said roadway; that the structure was of such a nature as to induce and invite children to play with it and ride upon it, rendered the premises and the said roadway dangerous, and to the knowledge of defendant a large number of young children were in the habit of entering upon the said table and riding and playing thereon. The testimony clearly shows that the turntable was wholly upon private property, upon a piece of ground used for a railroad yard, for icehouses, coal sheds, and warehouses. The ground is much below the level of the nearest streets, upon a "flat." The turntable is 132 feet from Phœnix street and 36 feet from Kalamazoo street, which streets intersect and form respectively the south and the east boundary of the land. The land at the intersection of these streets is 20 feet above the "flat" in which the turntable structure is located. Black river bounds the "flat" on the north and there is no street on or near the west boundary. A sidewalk considerably west of the property runs in a northwesterly direction from a point on Phœnix street to Black river. There are some private roadways upon the "flat," one of them beginning on Kalamazoo street and running in a northwesterly direction between the Michigan Central tracks and the turntable to the said sidewalk. In course of time the particular road has come to be used by people who desired to visit the buildings located on the "flat" and by others for convenience in going from Quaker and Williams streets which together debouch into Kalamazoo street some distance north of Phœnix street. Whether owners of the property traversed by this private road have consented to or dissented from such use of it by those who merely used it to cross the premises is not shown. It was

maintained entirely by the owners of the land, appears in no plat of the city, and its course has been varied from time to time to suit the convenience or need of the owners. It runs very close to the turntable, the foundations of which come to or very close to the roadway or wagon track. Plaintiff's intestate, upon the occasion of her injury, passed from a house standing at the intersection of Phœnix and Kalamazoo streets, on the north of Phœnix and the east of Kalamazoo, traveled across Kalamazoo, down the west side of that street to a point where it is intersected by the switch track south and east of defendant's main line, which switch track leads to coal sheds, went down the bank—side of the street—to the low ground, crossed the switch track, the main track, and climbed upon the turntable. She made no use of any road running through the grounds. The turntable was not secured by a lock, but was fastened. The testimony upon this subject was as follows:

Plaintiff's witness Edith F. Eager:

"I never observed whether or not it was locked."

Plaintiff's witness Dorothy Eager:

"The turntable was not inclosed by a fence or other inclosure. To get hold of the table to turn it there was a bar that we pushed, and it wasn't locked and it turned easy. I never knew it to be locked. It was not locked that evening when we went down there. * * * I remember of finding a plate in there between the ends of the rails. The children took that out. They could not push it until they took that out. I nearly always found that brace in there. I believe once or twice it was not there, but it was nearly always there. It was an iron bar a good deal like a board that extended between the rails of the turntable and also the rails on the land, and you could not budge the turntable either way until you had taken out that iron piece. I think we took it out that day. I don't remember if I helped. I could not tell you who took it out that day. When we took it out we just let it lay on the part that was on the land. We would usually put that piece back where we found it. The children

would usually do that. The iron plate was not very heavy. One little girl could lift it alone. I could lift it out. I can't remember a time when I did not find it there."

Plaintiff's witness Marie Wheeler:

"I can't remember who took the little iron plate out of it, but I remember it was in there. * * *

"Q. You say that you remember them taking out that iron plate; did you help take it out?

"A. No, sir; I don't remember who took it out.

"Q. Well, did you lift it?

"A. No.

"Q. How many of them took it out?

"A. I don't remember anything about it.

"Q. What did they do with it after they took it out?

"A. I don't remember that, either, unless they laid it on the ground there. * * * I suppose they had to take that plate out before they could turn the table around. I suppose that is what it is for. I understood that it had to come out before it would turn around."

Plaintiff's witness Belva Combs:

"When we got there we pulled an iron bar that kept it from going around and then started to push it and jump on. * * * I think I helped take out the iron plate that holds the turntable. I don't remember if Florence helped. Some of the girls did. I do not know which ones. I think it was Raymond Reid helped take it out. We just pulled it right out, I think. This plate fastened right in between the rails. We could not move the turntable when the iron plate was in there. I think it was there to keep it from turning around when not in use. We pulled it right straight out, slipped it between the rails. It was fastened right between the rails so it would slip and then you had to pull it out; you couldn't lift it, you would slip it to get one end out. All that was required was to pull it from between those ends, so that the ends of the turntable would clear. I don't think I could lift that plate myself. I think it would be as heavy as 40 or 50 pounds."

Plaintiff's witness William Packard:

"I have never known it to be locked before the accident. To keep it from swinging they usually fastened it

with something between the rails; sometimes it was a board and sometimes it was a plate of iron or steel."

Plaintiff's witness Richard Gottschlich:

"The turntable generally was fastened with an iron plate or wooden plank."

The testimony does not show how long defendant or the railway company have controlled the premises, nor that any employé of defendant had knowledge that children played upon or with the turntable, or was notified of the fact. There is testimony tending to prove, and for the purposes of this review does prove, that children have often been observed playing upon the turntable. Plaintiff was not sworn as a witness, and we have found nothing to indicate his relationship, if any, to his intestate. There is, however, the following testimony: Plaintiff's witness Edith Eager:

"I told the children time and again to stay away from there, and I know that the Reid children's parents had told them. * * * I had not told the Reid children that it was dangerous to play there."

Plaintiff's witness Dorothy Eager:

"Q. I suppose the children had said there, one to another, 'Be careful, or you will get caught?'
"A. Yes, sir. The children understood that if they were not careful they would be liable to be hurt by that turntable."

Plaintiff having rested his case, the court directed a verdict for the defendant.

OSTRANDER, J. (*after stating the facts*). The plaintiff assigns seven errors, none of which are mentioned in the brief. The argument, in the brief, is, in substance and effect, that the court should either refuse to further adhere to the doctrine announced in *Hargreaves* v. *Deacon*, 25 Mich. 1, *Ryan* v. *Towar*, 128 Mich. 463 (87 N. W. 644, 55 L. R. A. 310, 92 Am. St. Rep. 481), *Peninsular Trust Co.* v. *City of Grand Rapids*, 131 Mich.

571 (92 N. W. 38), and restated and elaborated in *Iamurri
v. Saginaw City Gas. Co.*, 148 Mich. 27 (111 N. W.
884), and in other decisions of the court, or should find in
the facts, notably in the fact that the turntable was so
close to the private road heretofore described, room for
the application of a different doctrine.   It is admitted
that plaintiff's intestate was a trespasser and was injured
while committing a trespass.   She was upon private prop-
erty and was making use of the structure and apparatus
found thereon for her own pleasure.   What was there
was not dangerous to her or to others unless interfered
with.   To use it, the plaintiff's intestate and those who
were with her were obliged to interfere with the structure,
to remove the fastening which kept it in position and to
set the turntable in motion.   It is not and it cannot be
claimed that the proximity of the structure to the high-
way had anything to do with—in any manner influenced
—the conduct of plaintiff's intestate.   It is not and can-
not be contended that she did not understand that the use
made of the structure was dangerous.   We find in the
facts no reason for considering the case one to be governed
by a rule different from the one announced in the decis-
ions referred to.   To the rule itself we adhere.

The judgment is affirmed, with costs of both courts.

HOOKER, MOORE, MCALVAY, and BLAIR, JJ., con-
curred.