PEKLENK v. ISLE ROYALE COPPER CO.

1. Mines and Mining—Landlord and Tenant—Negligence.

It was some evidence of negligence that a mining corporation, having property two by three miles in extent for a period of ten years and upwards, left a partially concealed and overgrown pit or abandoned portion of its mine uncovered and unguarded, upon a common about 200 feet from the highway and a fourth of a mile from houses which the corporation rented, notwithstanding that no officers of the company knew of its existence.

2. Same—Trespass—License.

The fact that children of such tenants were accustomed to traverse the common, which was unfenced, being known to defendant's officers, who raised no objection, imposed a duty on defendant to warn the tenants of any existing dangers known to them or discoverable in the exercise of reasonable care; and plaintiff's son, who fell into the pit while searching for wood, was not a trespasser but a licensee.

Error to Houghton; Streeter, J. Submitted January 10, 1912. (Docket No. 39.) Decided May 31, 1912.

Case by Margaret Peklenk, administratrix of the estate of Mike Peklenk, deceased, against the Isle Royale Copper Company for the wrongful death of decedent. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Reversed.

*O'Brien & Le Gendre*, for appellant.

*Allen F. Rees*, for appellee.

Plaintiff's decedent was her son, a lad nearly 12 years of age. On July 1, 1909, the boy's father, with his family, had moved into a house upon the Hurontown location, at that time a portion of the property of the defendant company. The whole estate of defendant covered an area approximately three miles long and two miles wide. Various companies had mined at different points upon said property, which came into possession of defendant in 1897. That portion of the property known as the old Huron mine had not been operated by defendant since it acquired the property. The location was entirely unfenced, an open common used for pasture. Across one portion of these premises there ran a footpath or trail, which connected with the highway between Hurontown and Dodgeville. It was used by the occupants of the little collection of houses upon this location as a short cut towards Dodgeville. This trail ran within a few feet (one witness places the distance at 15 feet) of an old pit. The opening is described as being about 5 by 6 feet in area at the surface. About its edges tall grass, bushes, and small trees had grown, so that at a distance of a few feet its existence would not be suspected. It was not an old disused shaft, but a hole in the surface which had resulted from mining operations carried upward from a stope in the old mine. It had never been protected by a fence, though defendant had caused all known dangerous, unused holes, pits, and shafts to be so protected in 1899. This hole was located about 1,400 feet from the home of the boy, and less than 200 feet from the highway. An open trench led from the

hole a short distance down the slope.    It was about 5 feet deep at the edge of the hole, diminishing in depth to nothing at a distance of about 100 feet.

On the 9th day of July, the boy left his home in the afternoon, taking a wheelbarrow, with the intention of collecting wood about the old mining location.    In some way, wholly conjectural, he found his way to the mouth of this pit, fell in, and was drowned.    His cap, floating upon the surface of the water in the pit, advertised the tragedy.    Immediately the defendant took steps to recover the body, and, after using a steam pump for four weeks, succeeded in lowering the water a distance of 87 feet, when the body was found.

The negligence charged against defendant is:

A.  Failure to warn or notify plaintiff or her husband, or plaintiff's intestate, of the existence of said pit.

B.  Failure to cover or guard said pit in any manner whatever for a period of 10 years and upwards.

C.  Failure to fence said pit for the same period of time.

D.  Failure to fill up said pit for the same length of time.

E.  Failure to remove brush, trees, and grass which partially concealed said pit from plaintiff's intestate.

A verdict having been directed in favor of defendant, plaintiff reviews her case in this court by writ of error.

BROOKE, J. (*after stating the facts*).    The declaration is composed of three counts.    The first two counts predicate liability on the part of the defendant by reason of the statute, 3 Comp. Laws, §§ 11527 and 11528.    The third count sets out a common-law duty, the breach of that duty and consequent damage.

The case seems to have been tried at circuit upon the theory of a common-law liability only.    In this court plaintiff does not urge defendant's liability under the statute, and we are therefore not called upon to determine its applicability to an opening such as the one which caused the death of plaintiff's intestate.    That question if presented would be one by no means free from doubt.

Was there testimony introduced by plaintiff tending to establish a liability at common law ?

The record contains abundant evidence tending to show that the hole into which the boy fell had existed for several years, and that it was unprotected. It is, we think, clear that no responsible officer of the defendant company had actual knowledge of the dangerous opening. The superintendent of the defendant company, however, testified that he had known of the existence of the trench leading from the hole down the slope for. some 11 or 12 years. He further testified that he learned of the shaft. the morning after the accident, and that he then saw a piece of timber which looked as if it had been recently broken; his inference being that this timber had constituted a portion of a covering for the shaft, and that it had rotted away and fallen into the shaft. After a careful consideration of all the testimony offered on behalf of the plaintiff, we find ourselves unable to agree with the conclusion of the learned circuit judge, who held that:

" In my judgment there has been an entire failure on the part of the plaintiff to establish any negligence in this defendant company, which was the proximate cause of the death of the child."

We think the question of the defendant's negligence should have been submitted to the jury. If the shaft had been permitted by the defendant to remain open and unguarded for a number of years, even without actual knowledge on its part, that fact would certainly afford some evidence that the defendant had not exercised reasonable care in the premises, and particularly would this be true if the existence of the dangerous opening was known to those living in the vicinity.

It is urged by the defendant in this court (though the point was not made below) that in any event the verdict was properly directed because the boy was, at the time he met his death, a trespasser, or at best a mere licensee, to whom the defendant owed no duty. Though not properly

before us for determination upon this record, as the case must be tried again, we deem it proper to discuss this phase of the question. The boy's father was a lessee, or, at any rate, an occupant by permission, of one of defendant's houses in the vicinity of the opening. No fences of any kind marked the boundaries of that portion of defendant's land which plaintiff and her family might traverse. The entire vicinity was an open common used by the employés of defendant (among whom was the father of deceased) as a pasture for their cows. It was commonly traversed by the boys in their search for wood, and this fact was known to the defendant's superintendent, and no serious objection seems to have been interposed. We are of opinion that such a license as was possessed by the father imposed upon the defendant the duty to warn him, and those members of his family coming upon the premises with him at its invitation, of such existing dangers as were known to it, or which should have been discovered by it in the exercise of reasonable care. See *Powers* v. *Harlow*, 53 Mich. 507 (19 N. W. 257, 51 Am. Rep. 154), and cases there cited.

The judgment is reversed, and a new trial ordered.

MOORE, C. J., and STEERE, MCALVAY, BLAIR, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.