PEKLENK v. ISLE ROYALE COPPER CO.

1. JURY—EMPLOYER—EXCUSING FOR CAUSE.

In an action by the mother as administratrix for the death of a minor son, caused by the alleged negligence of defendant mining company, employees of other mining companies under the same manager as defendant company, and subject to discharge by him, were disqualified to sit as jurors, and the trial court was not in error in excusing them.[1]

2. NEGLIGENCE—MINES AND MINING—NOTICE—DANGEROUS PREMISES.

In an action by the mother as administratrix for the death of a minor son, caused by falling into an old excavation on defendant's mining property, evidence of the close proximity of the hole to a much-traveled way, and the knowledge of others in the vicinity of its existence, together with other testimony, was sufficient to raise an

---

[1]As to competency as juror of employee or relative of employee of party or persons interested in an action, see note in 40 L. R. A. (N. S.) 982.

issue for the jury as to whether the officers of defendant, in the exercise of reasonable diligence, ought to have been aware of it.

3. SAME — CONTRIBUTORY NEGLIGENCE — INSTRUCTIONS — PRESUMPTIONS.

Where there are no witnesses of the accident, and no testimony of any contributory negligence on the part of the deceased, the presumption is that deceased was in the exercise of due care, and the court was not in error in so instructing the jury.

4. DAMAGES—EVIDENCE—FINANCIAL CONDITION.

In an action for the death of a minor son, brought by the mother as administratrix under the death act (section 10427 *et seq.,* 3 Comp. Laws), which has been held to require the administrator to show that some person has suffered some pecuniary injury by the death, while it is competent to show in a general way the financial circumstances of the beneficiaries, it is not competent to show specific instances of indebtedness owing by the beneficiaries and the reason for such indebtedness.

5. APPEAL AND ERROR—EVIDENCE—PREJUDICIAL ERROR—DAMAGES.

Where the amount of the verdict gives no evidence that the erroneous testimony had any appreciable effect upon it, the case will not be reversed, upon appeal.

Error to Houghton; Cooper, J.   Submitted November 12, 1914.   (Docket No. 49.)   Decided September 28, 1915.

Case by Margaret Peklenk, administratrix of the estate of Mike Peklenk, deceased, against the Isle Royale Copper Company for the wrongful death of plaintiff's intestate.  Judgment for plaintiff.  Defendant brings error.  Affirmed.

*Allen F. Rees* (*Rees, Robinson & Petermann,* of counsel), for appellant.

*Le Gendre & Driscoll,* for appellee.

BIRD, J.  Plaintiff recovered a judgment of $750 in the Houghton circuit court for the wrongful death of

her 12-year-old son. He lost his life by falling into an old excavation on defendant's mining property, which plaintiff claims should have been guarded. The case was before this court on a former occasion, and the opinion appears in 170 Mich. 299 (136 N. W. 352), where a more extended statement will be found. The appellant raises several questions. Those which we think demand attention are:

(1) Was the court in error in granting plaintiff's challenges of certain jurors drawn upon the panel?

(2) Was it the duty of the court to direct a verdict for defendant?

(3) Should the question of plaintiff's contributory negligence have been submitted to the jury?

(4) Did the court err in admitting certain testimony?

1. Several employees of the Calumet & Hecla Mining Company and the Osceola Consolidated Mining Company were excused for cause by reason of their being in the employ of these companies. The relations of the defendant company with these companies were very frankly stated by counsel for the defense as follows:

"Out of the 150,000 shares of the issued capital stock of the Isle Royale, the Calumet & Hecla Company, as such, is the holder and owner of 29,700 shares, a little less than one-fifth of the stock. A majority of the directors of the Isle Royale Company are also directors or officers of the Calumet & Hecla. I think, if I remember right, there are four out of seven who are in that situation; three being entirely independent of Calumet & Hecla interests. The local management, meaning by that the general manager and the oversight and supervision, is the same; Mr. McNaughton being general manager of the Calumet & Hecla, and also of the Isle Royale. Otherwise they are distinct corporations, each having its own superintendent and conducting its operations separately."

The position of the trial court was that it was a question which rested within his discretion, and, so

thinking, he exercised the discretion and excused the jurors. The question which is raised for our consideration is whether the trial court was right in so doing.

This court has held that the law disqualifies an employee from sitting as a juror in suits to which his employer is a party. *Pearce* v. *Mining Co.*, 149 Mich. 112 (112 N. W. 739, 12 Am. & Eng. Ann. Cas. 304). See, also, 24 Cyc. p. 276.

Presumably the thing which disqualifies the employee, under such circumstances, is the fear that, if he acts impartially and against the master, he may incur his displeasure, and thereby render his employment precarious. It places him in a situation which appeals to his selfish interest, and that is a very potent factor with the average person in controlling his actions. It is conceded that the defendant's board of directors is controlled by the directors of the Calumet & Hecla, and that Mr. McNaughton is the general manager of not only the Calumet & Hecla, but the Osceola and the defendant, and that he has the power to cause the discharge of any employee of the defendant, and the record shows that these facts were well known in that vicinity. The conditions which are liable to affect the fairness of the employee as a juror are present under these conditions, as well as in a case where the employment is direct, but perhaps in a lesser degree.

It is suggested by counsel that the question is whether an employee of one corporation is disqualified, as a matter of law, from acting as a juror in a case where another corporation, in which his employer owns stock, is a party. The question involves more than the mere inactive ownership of stock. It involves the control and management as well. The relation of the Calumet & Hecla to the Osceola Consolidated Mining Company is conceded by counsel to be substantially the same as its relations with the defendant. The fact that these corporations have distinct legal boundary lines sepa-

rating them is not so important with the employees as the fact that they have a common master. I am of the opinion that the position of the trial court was well taken, and that he did not err in excusing the jurors.

2. Was the defendant entitled to a directed verdict? The record of the retrial does not differ materially from the former one, save in this respect: The defendant made a very full showing upon the retrial that none of its officers had any actual knowledge of the existence of the hole. We think the evidence tended to support constructive notice. The proximity of the hole to a much-traveled path, and the knowledge of others in the vicinity of its existence, together with the other testimony, were sufficient to submit to the jury on the question whether the officers in the exercise of reasonable diligence ought to have been aware of it.

3. The trial court instructed the jury that:

"There is no evidence in this case upon which the boy can be held to have been guilty of contributory negligence contributing to his injury, and you must so find by your verdict."

The defendant recognizes the rule that due care upon the part of the boy must be presumed, but it insists, in substance, that the inferences to be drawn from the testimony make it a question of fact for the jury. No witness saw the child fall into the hole, and no conditions were shown about the hole which would lead to any reasonable conclusion or theory as to how he managed to get into it. We think there are no inferences from the testimony which are sufficient to send the question of his contributory negligence to the jury.

4. Frank Peklenk, the father of the deceased, was interrogated, under objection, in this wise:

"Q. State to the jury whether you were in debt at the time the boy fell in the hole and drowned.
"A. Well, I wasn't, not at that time; but after my boy died I went into debt.

"*Q.* Will you state who paid the funeral expenses of the boy?

"*A.* I paid some, but not all yet."

Counsel comments that:

"The fact that the father was indebted, either at the time of the boy's death or at any other time, could not affect, nor could it increase or diminish or measure, the 'pecuniary injury' suffered by the parents through the death of the boy. The evidence was immaterial and prejudicial, because its only purpose and its only effect could have been but to excite the sympathies of the jurors, and improperly influence their verdict."

The action is brought under the death act, 3 Comp. Laws, § 10427 *et seq.* In commenting upon this statute it was said by this court:

"The law requires in this class of cases that the administrator must show that some person has suffered some pecuniary injury by the death. The statute does not imply that damages and pecuniary losses necessarily flow from the negligent killing. This is a matter that must be made to appear by the proper allegation in the declaration, and proof of the fact."

In order to meet this construction of the statute, it was proper to show the age, calling, and condition of the father, and also the age and condition of the mother. *Black* v. *Railway*, 146 Mich. 568 (109 N. W. 1052). It was likewise competent to show the circumstances of the plaintiff and her family, and the condition, character, and sex of the child. *Houghkirk* v. *President, etc., D. & H. Canal Co.*, 92 N. Y. 219 (44 Am. Rep. 370) ; *Birkett* v. *Ice Co.*, 110 N. Y. 504 (18 N. E. 108). Thompson on the Law of Negligence lays down the rule that:

"In jurisdictions where the statute makes the recovery turn upon the dependency of the beneficiaries on the deceased for support, the circumstances, age, health, and means of support of the beneficiaries may be proved, for the purpose of showing whether such beneficiaries would in all likelihood have received finan-

cial aid from the deceased. * * * And where the suit is for the death of a boy 7 or 8 years of age, it has been held that, if the family was poor, the fact that the boy would probably have commenced early to assist in supporting the family may be taken into consideration." Section 7134.

While it was undoubtedly competent to show in a general way the financial circumstances of the beneficiaries, we doubt the propriety of permitting the administrator to show specific instances of indebtedness owing by the beneficiaries, and the reason for such indebtedness. The amount of the verdict, however, in this case gives no evidence that this testimony had any appreciable effect upon it. In view of this, we do not think the error is serious enough to call for a reversal of the case.

The judgment of the trial court will be affirmed.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.