## ANDERSON v. NEWPORT MINING CO.

NEGLIGENCE—CHILDREN—LICENSEE—TRESPASSER—EXPLOSIVES.

In an action for personal injuries by a boy 8 years and 5 months of age against a mining company, where defendant, having actual notice that a path crossing its premises was used by large numbers of children and adults, and had been so used for over 15 years, gave no notice or warning that dangerous explosives were stored in and about an uninclosed building two to four feet from the path, and plaintiff was injured by the explosion of a dynamite cap which he took from a box left under the runway leading to the building in view of persons using the path, the court below was in error in directing a verdict *non obstante veredicto* on the ground that there was no evidence of negligence on the part of defendant, and that the injury was in part the result of a wrongful act on the part of plaintiff. OSTRANDER, C. J., and BROOKE and STONE, JJ., dissenting.

Error to Gogebic; Shepherd, J., presiding. Submitted January 11, 1918. (Docket No. 50.) Decided July 18, 1918.

See notes in 14 L. R. A. (N. S.) 586; 24 L. R. A. (N. S.) 1257; 42 L. R. A. (N. S.) 840; L. R. A. 1917A, 1295.

Case by Charles Anderson, an infant, by his next friend, against the Newport Mining Company for personal injuries. Judgment for defendant *non obstante veredicto*. Plaintiff brings error. Reversed, and remanded with instructions to enter judgment upon the verdict.

*Sigurd G. Nelson* and *James A. O'Neill,* for appellant.

*E. E. Storkan (Flanders & Fawsett,* of counsel), for appellee.

MOORE, J. This case was brought to recover damages for personal injuries received by plaintiff on June 15, 1913, resulting from the explosion of a dynamite cap. On the trial a verdict was returned by the jury for the plaintiff. Judgment was entered by the judge for the defendant notwithstanding the verdict. The case is brought to this court on writ of error to review that judgment.

The defendant operated an underground iron mine in Ironwood, a city of about 15,000 population. Its property was situated between the platted part of the city known as Jessieville, which adjoins it on the south, and the Newport and Reno locations on the north. The defendant occupied a portion of the surface of its premises with stock piles, shaft houses and other buildings, the remainder being uninclosed and unoccupied. Jessieville with a population of about 1,500 was separated from the principal part of the city by defendant's property. For a long time people on foot in going to and from Jessieville to Ayer street in Ironwood used a path continuing northwesterly from the north end of Stevens street over the premises of the defendant. For upwards of 15 years prior to the injury to plaintiff, this path, well defined and worn down in places to a depth of more than three inches,

was constantly and continually used by the general public as a foot way. In addition to others who used it, from 35 to 40 children, ranging in ages from 5 to 14 years, during the school year used the path four times a day in going to and returning from school. It was also used by children attending the Jessieville church. A small building belonging to the defendant was located near the path which passed it on the north side, the building being about two to four feet from the path. There was no inclosure about the building and nothing to warn people away, and within ten feet of it there was a dump or rubbish pile. At the north-west corner of the building was a door, the sill of which was two and one-half or three feet above the ground and from this sill a runway, constructed of planks extending down at an angle of about 45 degrees to the ground, across this runway cleats were nailed, the north end of the opening underneath the runway was open to the view of persons using the path.

For upwards of two weeks prior to the date of the injury to plaintiff the defendant had been loading ore from a stockpile into cars. In connection with this work dynamite caps were used; these explosives were stored in an open box under the runway in view of persons using the path. The sticks of dynamite packed in sawdust were in a wooden box about eighteen inches long, a foot wide and ten inches high from which about one-half the top had been removed. The caps were in a small red tin box which was on top in the wooden box. The box was under the runway, its distance from the path being estimated by plaintiff's witnesses as between four and eight feet. There were no notices or warnings of any kind. The defendant had actual knowledge that large numbers of children and adults had used the path for years and made no objection in any way.

On the day of the injury plaintiff, a boy eight years and five months of age, was passing along this path with his brother, two years older, when his attention was attracted by this box which had been pulled partly out from under the runway. The top was off the box, he saw the red tin box containing the dynamite caps inside. He removed the red tin box from the powder box and opened it; taking two of the dynamite caps he gave one to his brother. He did not know that they were dangerous and took them believing he could make whistles out of them. After getting the cap he went to his home a distance of two or three blocks and having failed in other ways to remove the fulminate from the inside, attempted to burn it out with a match, with the result that it exploded, badly mutilating his left hand and seriously injuring his right hand, face and right eye.

Upon the trial defendant submitted the following:

"Question: Was there, on and prior to June 15, 1913, a clearly defined path across the lot on which the Blackwell barn was then located, running in a northwesterly and southeasterly direction and passing within less than fifteen feet of said barn?"

The jury returned a verdict in favor of the plaintiff for $5,500 and answered the special question in the affirmative.

The court ordered that judgment be entered in favor of the defendant, notwithstanding the verdict, basing his decision on two grounds:

*First.* Because there was no evidence of negligence on the part of the defendant.

*Second.* Because the injury was in part the result of a wrongful act on the part of the plaintiff.

The facts were not very complicated and were passed upon under a fair charge of the court, and were found in favor of the plaintiff.

The question is, Under which of the two lines of

cases do the facts bring this case? Counsel for the appellee insist the trial judge was right in entering judgment in favor of the defendant, notwithstanding the verdict, for both of the reasons stated by him. They cite, in support of this contention, *Ryan* v. *Towar*, 128 Mich. 463; *Peninsular Trust Co.* v. *City of Grand Rapids*, 131 Mich. 571; *Habina* v. *Electric Co.*, 150 Mich. 41; *Reid* v. *Harmon*, 161 Mich. 51; *Morrison* v. *Carpenter*, 179 Mich. 207, and other cases. Counsel for appellant insist the above cases are distinguishable from the case before us, and that it is controlled by a line of decisions of this court commencing with *Powers* v. *Harlow*, 53 Mich. 507. It may be well to recall some of the language used by Chief Justice COOLEY in that opinion.

On the date of the accident, plaintiff, who was eight years and four months old, went with his brother, two years older, to take their father his dinner. After delivering the dinner they loitered about, when plaintiff saw the box partly uncovered, and from it took one of the exploders, which he placed on a stone and struck with another stone, it exploded injuring his left hand. A verdict was directed in favor of the defendant. In reversing the decision of the lower court, Chief Justice COOLEY, speaking for the court, said in part:

"In this case a shed in which a dangerous explosive was stored was left only partly enclosed, and its structure and location were such as naturally to invite the entrance of children either for play or shelter from sun and rain. Children were rightfully near it; there was nothing in its appearance to warn them off; it was not fastened against their entrance, and there was nothing about it to indicate that they would do injury or be injured by going there. The box containing the explosives seems to have had more the appearance of a box discarded as of no value and with worthless refuse in it than of a box which it was of the very highest importance should be guarded with sedulous care. It was never firmly fastened, and the only warn-

ing upon it was a word written upon a top board which was not always kept on. A man of ordinary prudence if told that so dangerous an article was so carelessly stored might well have deemed the statement incredible. We cannot under these circumstances say that the plaintiff's father was chargeable with fault in not suspecting the danger and warning his children away from it, or that the child himself was blameworthy in acting upon the childish instincts and propensities which combined with the negligence of defendant's servant to bring the danger upon him."

A further reading of the opinion will show it to be on all fours with the case before us.

In *O'Leary* v. *Telephone Co.*, 146 Mich. 243, Justice BLAIR speaking for the court said:

"The case of *Powers* v. *Harlow* is an authority in this State, and is supported by the great weight of authority in this country and in England."

*Powers* v. *Harlow* is referred to in all of the opinions in *Iamurri* v. *Saginaw City Gas. Co.*, 148 Mich. 27. In none of them is it suggested that *Powers* v. *Harlow* is not still the law in this State. In *Peklenk* v. *Isle Royale Copper Co.*, 170 Mich. 299, Justice BROOKE, speaking for the court, said in part:

"We are of opinion that such a license as was possessed by the father imposed upon the defendant the duty to warn him, and those members of his family coming upon the premises with him at its invitation, of such existing dangers as were known to it, or which should have been discovered by it in the exercise of reasonable care. See *Powers* v. *Harlow*, 53 Mich. 507 (19 N. W. 257, 51 Am. Rep. 154), and cases there cited."

In *Morrison* v. *Carpenter*, 179 Mich. 207, Justice STONE, speaking for the court, said in part:

"If a licensee had been using a well defined path openly and continuously, we think he takes only such risks as have existed during the time of using the

same; but this does not extend to additional risks on said path made afterwards by the licensor, and without knowledge of the licensee. In other words if the licensee has been using a defined path, for a length of time with the knowledge and permission of the licensor, then, if the licensor interferes with said path by making it more dangerous, he should give notice to the licensee, or guard the dangerous place so made."

We think the case is within the line of cases represented by *Powers* v. *Harlow,* and that the judge erred in directing a verdict for defendant.

The judgment is reversed, and the case remanded with directions to the trial judge to enter judgment upon the verdict for the plaintiff, and for such further proceedings as may be proper. Plaintiff will recover his costs.

BIRD, STEERE, FELLOWS, and KUHN, JJ., concurred with MOORE, J.

OSTRANDER, C. J. (*dissenting*). Assuming that plaintiff was not a trespasser in using the traveled path across defendant's premises, was licensed to do that, he went aside, out of the way, to examine, and then to appropriate, some of defendant's personal property. Having appropriated and carried away this property, in another place, not on defendant's premises, and after some lapse of time, he was injured in attempting to convert it to some personal use. It is alleged in the declaration of the plaintiff that because children, including plaintiff, did use the said way and had for a long time done so, and because they were in the habit, to defendant's knowledge, of straying from the way and playing about the premises of defendant, over which the way was, it became the duty of defendant to know that children would be

"childishly and innocently attracted by said dynamite, explosives, powder, and caps, stored, left or retained by said Newport Mining Company, upon and

near said paths and passageways, and which dynamite, powder, explosives and · caps, said defendant well knew, or in the exercise of ordinary care should and would have known, were of such nature and appearance as to irresistibly attract children, and cause children (such as plaintiff) to handle, pick up, and play with same, with injurious results and effects."

Defendant used the dynamite and explosive caps in its business carried on upon the premises. They were stored in boxes and pushed under the cover made by an inclining approach to a door of one of its buildings. They were harmless unless interfered with. The boxes were seen by plaintiff and his brother while they were traversing the way and they proceeded to investigate the contents. If an adult had done precisely what plaintiff did, no one, I assume, would contend that the defendant was liable. Why should there be a different rule when a child of ten and another more than eight years of age commit the trespass? Manifestly, there can be no different rule unless it is held that because the children were *attracted* they were, therefore, excused: that in attracting them the owner invited them and because they were his invitees, upon his premises, he owed them the duty he would owe to any one he invited there.

However much one may analyze and reanalyze the facts disclosed by the record in *Powers* v. *Harlow*, 53 Mich. 507, it is plain, I think, that the duty of defendant was made to rest upon an invitation to the injured child to go upon his premises. It is said in the opinion, of the right given to the child's father:

"A person giving such a license, especially when he gives it wholly or in part for his own interest as was the case here, and thereby invites others to come upon his premises, assumes to all who accept the invitation the duty to warn them of any danger in coming, which he knows of, or ought to know of, and of which they are not aware."

In *Peklenk* v. *Isle Royale Copper Co.*, 170 Mich. 299, the territory invaded by children of occupants of the houses on the tract, tenants of defendant, was open pasture land upon which the cows were allowed to run and the children to gather wood.

There was no invitation in the case at bar unless, as I have said, leaving something upon the premises, outside of the way, attractive to children, amounted to an invitation, a doctrine which this court has refused to recognize. The question was squarely presented, debated and decided in *Ryan* v. *Towar*, 128 Mich. 463. The opinions contain references to many adjudicated cases. It was held that an invitation or a license to cross the premises of another cannot be predicated on the mere fact that no steps have been taken to interfere with such practice, that there is no difference between children and adults as to the circumstances which will warrant the inference of an invitation or a license to enter upon another's premises, that the owner of land is not liable to trespassers thereon for injuries sustained by them not due to his wanton or wilful acts, and that no exception to this rule exists in favor of children who are injured by dangerous machinery, naturally calculated to attract them to the premises. The judgment of this court affirmed the rulings of Mr. Justice STONE, who heard that cause at circuit. It has been the law of this State since it was decided in 1901. No subsequent decision of the court has questioned it. In *Peninsular Trust Co.* v. *City of Grand Rapids*, 131 Mich. 571, it was alleged in the declaration that a certain reservoir had a great tendency to and did excite the curiosity of and was an attractive place for children to play, many of whom frequented the same as a matter of childish curiosity. A child so attracted fell into this reservoir and was drowned. Recovery was refused upon the ground that defendant city was not negligent. The law of the case

is not discussed. Mr. Justice MOORE, in delivering the opinion, said, among other things:

"The writer of this opinion did not agree with the conclusion reached by a majority of the Justices in *Ryan* v. *Towar,* but since it was filed it must be regarded as the law in this State in all like cases. \* \* \* The opinions are long and carefully considered."

*Reid* v. *Harmon,* 161 Mich. 51, is a case in which the doctrine of invitation by attraction was again urged upon this court, and refused. A child was injured while playing upon a railroad turntable. In principle, neither *Ryan* v. *Towar, Peninsular Trust Co.* v. *City of Grand Rapids,* nor *Reid* v. *Harmon* can be distinguished from the case at bar.

If any one shall be of opinion that *Powers* v. *Harlow* was rested upon some rule other than the one I have stated—upon the doctrine that it is negligent for any one to leave upon his premises where they can be seen dangerous things attractive to children, as the reference in the opinion to *Railroad Co.* v. *Stout,* 17 Wall. (U. S.) 657, might suggest, then the foundation rule of the case was expressly denied in *Ryan* v. *Towar.* In any event, therefore, decision of this case cannot be rested upon *Powers* v. *Harlow* without overruling *Ryan* v. *Towar* and the decisions which have followed it.

In *Railroad Co.* v. *Stout,* a boy was injured while playing upon a turntable on the premises of the railroad company. It was alleged that the railroad company was negligent in not fastening or guarding the apparatus so that it could not be moved by children. As stated in the opinion, the trial judge in that case instructed the jury

"that to maintain the action it must appear by the evidence that the turntable, in the condition, situation, and place where it then was, was a dangerous machine, one which, if unguarded or unlocked, would be

likely to cause injury to children; that if in its construction and the manner in which it was left it was not dangerous in its nature, the defendants were not liable for negligence; that they were further to consider whether, situated as was the defendants' property, in a small town, somewhat remote from habitations, there was negligence in not anticipating that injury might occur if it was left unlocked or unguarded; that if they did not have reason to anticipate that children would be likely to resort to it, or that they would be likely to be injured if they did resort to it, then there was no negligence."

This instruction was approved.

One has to make but cursory examination of the opinions delivered in *Ryan* v. *Towar* to discover that the law of *Railroad Co.* v. *Stout* and of similar cases was expressly rejected by this court. It is obvious that cases like *Morrison* v. *Carpenter*, 179 Mich. 207, have no application here and discuss no doctrine applicable to the facts or the contentions in this case. That case involved a peril created in the way itself, to the injury of one licensed to use the way.

The learned trial judge, after first submitting the issues in the case at bar to a jury, entered a judgment for defendant *non obstante*. In doing this, he followed the law of this State, and in my opinion the judgment should be affirmed.

BROOKE and STONE, JJ., concurred with OSTRANDER, C. J.