BELISLE *v.* JONES.

EXPLOSIVES — INFANTS — NEGLIGENCE — EVIDENCE—SUFFICIENCY—
DIRECTED VERDICT.

In an action for the death of an eight-year old boy caused
by an explosion when, while playing, he dropped a lighted
match into the tank of an old automobile owned by a
brother of defendant and stored with defendant's consent
on a vacant lot owned by him, evidence, *held,* to show
no actionable negligence, and that a verdict should have
been directed for defendant.

Error to Wayne; Barton (Joseph), J., presiding.
Submitted June 20, 1923.     (Docket No. 50.)     De-
cided July 19, 1923.

Case by Leo H. Belisle, administrator of the estate
of Edward Belisle, deceased, against Elmer B. Jones
for the alleged negligent killing of plaintiff's decedent.
Judgment for plaintiff.     Defendant brings error.
Reversed.

*Harry, McMaster* and *Jacob Fisher* (*Donnelly,
Halley, Donnelly & Munro,* of counsel), for appellant.

*Harry C. Milligan,* for appellee.

MOORE, J.     The defendant was the owner of a
parcel of land in Detroit, which had a frontage of
approximately 150 feet on Ferry Park and a depth of
about 137 feet.     The front of the lot was covered by
a 10-family, 2-story cement block flat building, and a
2-family flat.     These buildings extend from the front
toward the rear approximately 50 feet.     About 25
feet south of the rear wall of the flats was a board
fence about four feet in height which separated the

flats from an open space in the rear.    Access to the flats from this open space was gained through a gate in the fence.    The open space was approximately 150 x 60 feet and was bounded on the north by the fence referred to, on the east by a like fence, on the south by a public alley, and on the west by a public alley.    According to the testimony there were piles of cement building blocks along the alleys with several openings through them.    There were usually five or six dump wagons on the east end of the lot and a pile of gravel used in the defendant's business as a builder.

On this end of the lot near the fence was an old Regal automobile.    Ray Jones, a brother of the defendant, was the owner of this old automobile.    He quit driving it in 1918.    The defendant lived on South Ashland street.    Several months before the accident this car, by the permission of the defendant, had been towed from a garage in which it had been stored, to the east end of the lot.    Ray Jones testified that the battery had been removed and the gasoline drained from the tank through the pet cock at the bottom of the tank and had been used in a Ford car when he quit driving the Regal.    Mr. McClatchey testified that prior to the accident he had tried to get gasoline out of the tank to use in mending tires, and that he thought the pet cock was plugged up, and that he pushed a wire through it and the tank was dry. Another witness testified he tried to get gasoline from the tank and could not.

Three witnesses in all testify that the gasoline had been drawn from the car long before the accident happened, though it appears from the testimony of the fireman, who examined the car after the accident, we quote from his testimony:

"Went back there and this gas tank was under the front seat of the machine and it had blown up and

we punched several holes in it so there couldn't be any more accidents of that kind with it.

"*Q*. You know whether at the time it was burning there was any gasoline in the tank?

"*A*. That's why we punched holes in it, to let gasoline out, the little bit that was remaining.

"*Q*. You punched holes in the bottom of the tank?

"*A*. Yes, sir, with our fire axes. * * * I remember seeing gasoline coming out of the tank. The tank was under the front seat of the machine. There was a small quantity—about a quart I would say."

On April 1, 1920, in the afternoon, Edward Belisle, a child eight years and some months old, son of the plaintiff, and several other children were in the open space and Edward Belisle and another child were in the front seat of the Regal automobile. An explosion took place, the boy Edward Belisle was badly burned and died 16 days later. The only evidence as to the cause of the explosion is the statement of a witness that shortly after the accident the boy said he put a match in the tank to see what was in it. The Belisle children lived down the alley more than a block away from the premises. The plaintiff produced witnesses who testified that children played in the lot on the old automobile and in the sand and gravel pile. One witness testified that she saw the defendant, Elmer B. Jones, on the premises while children were there, and this on only one occasion. The caretaker of the premises testified that he had been directed to drive children away when they played in the lot, and that he had done so. At the close of the testimony counsel for defendant asked for a directed verdict. This request was overruled, and the jury returned a verdict in favor of the plaintiff in the sum of $5,000. A motion was made for a new trial and that was overruled. The case is brought here by writ of error.

There are many assignments of error but the important question is whether the defendant was guilty

224—Mich.—13.

of actionable negligence.   Counsel have been diligent in looking for cases which would be helpful to the court.   Some of those cited are *Powers* v. *Harlow*, 53 Mich. 507 (51 Am. Rep. 154) ; *Ryan* v. *Towar*, 128 Mich. 463 (55 L. R. A. 310, 92 Am. St. Rep. 481) ; *Iamurri* v. *Saginaw City Gas Co.*, 148 Mich. 27; *Anderson* v. *Newport Mining Co.*, 202 Mich. 204; *Preston* v. *Austin*, 206 Mich. 194; *Jaworski* v. *Detroit Edison Co.*, 210 Mich. 317; *Douglas* v. *Bergland*, 216 Mich. 380 (20 A. L. R. 197), and other authorities to be found in the briefs of counsel, but none of them is controlling of the instant case.

In what way does the record show actionable negligence on the part of the defendant?   We quote from the brief of counsel for the appellee:

"What more can we prove?   Much complaint is made by counsel for the defendant in reference to proof in this case.   They say we did not prove that the defendant knew that there was gasoline in this automobile.   This court well knows that each case is susceptible of so much proof, and no more.   To prove that the defendant knew that this automobile contained gasoline would be impossible.   We contend, furthermore, that it was not necessary for us to prove that he knew that this automobile contained gasoline; but that it was a question for a jury to determine whether or not he failed to exercise ordinary care in not discovering the presence of this dangerous substance."

The defendant testified he had no knowledge there was gasoline in the tank.   He did not own the automobile.   There was nothing to show that the car was differently constructed than is usual with cars having tanks under the front seat.   What reason had defendant to anticipate that some curious child would remove the cushion, remove the cap in top of the tank and drop a lighted match in the tank to see what would happen.   The streets of all our cities are crowded at the curb with

cars that are parked and left alone. Many vacant lots are practically covered with used cars which are for sale. The automobile is in common use. It cannot be used without tanks and gasoline therein. May not the owner without incurring liability leave his car on private property without drawing off the gasoline? To go one step farther, May he not give permission to the owner of an automobile to store a car in his vacant private property without at his peril requiring there shall be no gasoline in the tank of the car? We think these questions should be answered in the affirmative.

The case is a regrettable one. Our sympathy goes out naturally to the boy and to his parents, but the accident cannot be traced to the actionable negligence of the defendant. The trial judge should have directed a verdict for the defendant.

The case is reversed, with costs to the appellant, and a new trial is granted.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.