Mark Allen McKENZIE, Plaintiff,

v.

FAIRMONT FOOD COMPANY, Defendant.

No. C 69–99.

United States District Court
N. D. Ohio, W. D.
Aug. 25, 1969.

Robert Z. Kaplan, Toledo, Ohio, for plaintiff.

John G. Mattimoe, Marshall, Melhorn, Bloch & Belt, Toledo, Ohio, for defendant.

## OPINION

DON J. YOUNG, District Judge.

■ This is a personal injury action brought by the administrator of decedent's estate, also decedent's father, to recover damages sustained by reason of the death of decedent on July 18, 1967. The action was originally filed in the Court of Common Pleas of Lucas County, Ohio, and was removed to this Court by defendant, who now moves for a dismissal of the complaint for failure to state a cause of action. Such a motion is proper at this juncture pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure.

The complaint alleges that on July 18, 1969, the decedent, a ten year old boy at that time, was playing with friends upon the premises of the Vita Boy Potato Chip Company in Toledo, Ohio, that Company being a division of the defendant Nebraska corporation. It is further alleged that these children had played on these premises on prior occasions, that defendant's agents and employees had knowledge of such activities, and that decedent and his friends were "encouraged" to use defendant's premises. It is further alleged that defendant corporation parked its trucks in a lot which was not enclosed by a fence, and that defendant knew that decedent and his friends were using the lot as a playground. It is also alleged that "the gas tanks of its trucks were open and exposed and not covered and at no time were the gas caps on said trucks covered with locks". Finally, it is alleged that the decedent on July 18, 1967, inhaled an excessive amount of gas fumes from an opened and exposed gas tank of defendant's truck, that such inhalation proximately caused his death on that day, and that defendant through its agents knew

that plaintiff's decedent and his friends had so inhaled gas fumes on previous occasions. It is also alleged that the conditions existing on July 18, 1967 "were inviting" to plaintiff's decedent.

A reading of plaintiff's complaint in its entirety discloses some matters of a factual nature which are vague enough to present potential areas of factual dispute, and some allegations even border on the incredible, such as the claim that plaintiff's decedent and his friends were "encouraged" to use defendant's premises. If the defendant chose to dispute these allegations with contrary factual assertions of its own, the Court would have to deny defendant's motion, for it cannot take judicial notice of the fact that few companies "encourage" children to play in their truckyards, however skeptical it may be that plaintiff could prove such a fact by a preponderance. However, the defendant in the memorandum in support of its motion has carefully avoided any possible disputes of fact which the complaint might be construed to raise by making various assumptions which it undoubtedly would not concede at a trial upon the merits. First, with respect to that part of the complaint which rather unclearly alleges that the gas caps on defendant's trucks were open, exposed, and unlocked, defendant assumes for purposes of its motion that there was no gas cap at all on the truck from which the decedent inhaled the fumes. In addition, the defendant has avoided the necessity of resolving whether the decedent was a licensee or a trespasser on the day in question, for defendant also assumes for purposes of its motion that the decedent was classed as a licensee.

The question now becomes whether, assuming that the plaintiff has established all of these facts alleged, and the defendant has failed to rebut them in any manner, the complaint even in that posture states a claim upon which relief can be granted. This question must be resolved under Ohio law, since the action in the state courts was re-

moved into this Court on a diversity of citizenship basis.

At the outset, it would be well to state that insofar as plaintiff seeks to bring this case within the "attractive nuisance" or "turntable" doctrine, Ohio law does not support his position. That doctrine had its genesis in the renowned case of Sioux City & Pacific R. R. v. Stout, 84 U.S. (17 Wall.) 657, 21 L.Ed. 745 (1874), and it has been adopted by the courts of several states. See 38 AM.JUR., *Negligence* §§ 142 *et seq.* (1941). While the doctrine has been variously stated in these states, the basic proposition is that one who maintains upon his premises a condition, machine, or other instrumentality which would be dangerous to children because of their inability to appreciate the hazards involved, and which would be expected to attract children to the premises because of its inviting nature, owes a duty to exercise reasonable care to protect such children from the dangers potentially involved. 38 AM.JUR., *Negligence* § 142 (1941). The Supreme Court of Ohio, in a particularly thorough and well-reasoned decision, expressly rejected the application of this doctrine in Ohio, Wheeling & L. E. R. R. v. Harvey, 77 Ohio St. 235, 83 N.E. 66, 19 L.R.A.,N.S., 1136 (1907), and the other courts of Ohio have followed that decision. *See, e. g.,* Minick v. Windsor Brick Co., 30 Ohio App. 232, 164 N.E. 769 (1929); Rossiaki v. West Side Motors, 19 Ohio L.Abs. 191 (Ct.App. 1935); Bronikowski v. Bigham, 143 N.E.2d 490 (Ct.C.P.Ohio 1955), aff'd 145 N.E.2d 331 (Ct.App.Ohio 1956). And a later Ohio Supreme Court decision reaffirmed the rule set forth in the *Harvey* case, *supra.* Hannan v. Ehrlich, 102 Ohio St. 176, 131 N.E. 504 (1921).

Plaintiff in its memorandum in opposition to defendant's motion cites several cases for the proposition that the attractive nuisance doctrine can be applied in Ohio if certain facts are proven. A case often cited for this proposition is Harriman v. Pittsburgh, C. & St. L. R. R., 45 Ohio St. 11, 12 N.E. 451 (1887).

Since this case was decided before the *Harvey* decision, it was argued and considered by the *Harvey* court, and that court expressly distinguished it from turntable-type cases on its particular facts, stating that the *Harriman* decision instead rested upon long settled principles of law. Wheeling & L. E. R. R. Co. v. Harvey, 77 Ohio St. at 257–58, 83 N.E. at 73. The *Harriman* case was also distinguished in *Hannan v. Ehrlich, supra,* and since it involved a dangerous instrumentality not present in the instant case,[1] and application of different principles of tort law involving resulting higher duties owed by the defendant maintaining such dangerous instrumentalities, the *Harriman* decision must similarly be distinguished from the case at bar. Ohio law is reasonably clear that an automobile is not a dangerous instrumentality even when being operated, except under very limited conditions not present in the case at bar involving a parked vehicle, and the facts alleged in the petition therefore do not bring this case under the "dangerous instrumentality" doctrine followed in *Harriman. See* Gossett v. Chrysler, 359 F.2d 84, 88 (6th Cir.1966); Williamson v. Eclipse Motor Lines, 145 Ohio St. 467, 62 N.E.2d 339, 168 A.L.R. 1356 (1945); Higbee Co. v. Jackson, 101 Ohio St. 75, 90, 128 N.E. 61, 14 A.L.R. 131 (1920); Hanratty v. Godfrey, 44 Ohio App. 360, 184 N.E. 842 (1932).

In addition to all the foregoing indications to this Court that the attractive nuisance doctrine does not prevail in Ohio, 39 OHIO JUR.2d, *Negligence* § 75 (1959), in stating that the doctrine has been rejected in Ohio, contains the following:

> While some few of the earlier Ohio cases contain statements indicating a tendency to adopt this doctrine, [citing *Harriman* and two other cases set forth by plaintiff in its memorandum] it may now be regarded as settled that *the attractive nuisance doctrine * * * is not the law of Ohio * * * * (citing *Harvey* and numerous other Ohio cases), 39 OHIO JUR.2d, *Negligence* § 75 (1959). (Emphasis added).

The plaintiff therefore does not make out a jury case by reason of allegations which seek to bring the action within the attractive nuisance doctrine, and the case must instead be determined upon ordinary principles of negligence law. Defendant has cited several Ohio cases to this Court in its brief in support of the motion to dismiss, and two of them appear to be particularly relevant to the issues at hand; Case v. Miami Chevrolet Co., 38 Ohio App. 41, 175 N.E. 224 (1930); and Rossiaki v. West Side Motors, 19 Ohio L.Abs. 191 (Ct.App.1935). In both of these cases the defendant car agencies had placed old automobiles on unfenced lots, children had been playing on the lots with the passive permission of the defendants, and plaintiffs' decedents were fatally injured when they threw matches into the gas tanks. In both cases, the children were treated as licensees, and in both cases the reviewing courts accepted the allegations of the complaint that children had played on defendants' lots in the past to defendants' knowledge. The two appellate courts both affirmed the judg-

---

1. The *Harriman* case involved a situation where young boys walking along the defendant's railroad tracks found an unexploded torpedo, and while playing with it were injured, and one of the express grounds for the Supreme Court of Ohio's reversal of a demurrer to the petition was a factual finding that the defendant had for a long time allowed children to walk along its tracks without objection, and that therefore the defendant was negligent in imposing a new danger such as a torpedo which would not be expected without also taking precautions against possible injuries from its presence. While in the instant case the Court accepts for purposes of defendant's motion the allegation that defendant had permitted and had knowledge of children playing in its truck yards in the past, the presence of gasoline in defendant's trucks cannot be said to be a new danger.

ments for defendants below, both entered before the case reached the jury, *Rossiaki* on the primary ground that the defendant property owner only had a duty to the deceased children to not wilfully injure him and to exercise ordinary care, and *Case* on the ground that no act or omission of defendant proximately caused the injury. *Case* went on to point out that the manifest proximate cause of the injury was instead the dropping of a lighted match in the gas tank, for without that act of plaintiff's decedent the gas would have remained harmless in the automobile. If these appellate Ohio decisions do not impose a duty on automobile dealers to lock or drain gas tanks of *abandoned* vehicles, or vehicles not currently in operation, where the danger of explosion is at least as foreseeable and certainly more preventable, it is crystal clear that these courts would not impose such a duty on the facts of the instant case. Assuming that in all cases involving gas in the tanks of vehicles that Ohio courts will apparently refuse to consider the liquid as a hazard or dangerous instrumentality like turntables, ponds, or explosives, the instant case involves an intervening act of the deceased child which requires much more deliberation, and which is less foreseeable by the defendant than the tossing of a lighted match into the tank. It is much more akin to the notorious glue-sniffing problem encountered with young children than to cases involving injuries from explosive substances, and this Court is unable to conclude that a duty to prevent willful deliberate acts of that nature should be imposed upon this defendant.

▪ In fact, even if the original attractive nuisance doctrine were in full force and effect in Ohio, in addition to accepting all allegations of plaintiff's complaint in this action, plaintiff has still not stated a claim upon which relief may be granted. This is so because there has been no allegation of breach by defendant of any *duty* which it owed to this plaintiff, nor of any actionable negligence by this defendant. Plaintiff has cited no cases, and this Court has been unable to find any, which impose a duty upon owners of vehicles to lock off the tanks from the public, or even from invitees. It is not surprising that no such decisional law exists, for such a duty would put an unrealistic burden upon *all* owners of vehicles who have gasoline in their tanks, as well as upon owners of all other machines which utilize gas.

The two Ohio cases cited by defendant to indicate a reluctance by our courts to impose such an onerous burden, however, as do cases from other states. In *Belisle v. Jones*, 224 Mich. 191, 194 N.W. 414 (1923), for example, an eight year old boy dropped a lighted match into the gas tank of an abandoned automobile which was on the defendant's premises by his permission, and in holding that no negligence had been shown on the part of defendant, the Supreme Court of Michigan stated:

> The streets of all our cities are crowded at the curb with cars that are parked and left alone. Many vacant lots are practically covered with used cars which are for sale. The automobile is in common use. It cannot be used without tanks and gasoline therein. May not the owner, without incurring liability, leave his car on private property without drawing off the gasoline?

If this statement of the practical consequences attendant to the imposition of such a heavy burden was true in 1923, as this Court believes it was, it follows almost *a fortiori* that such judicial reluctance must continue to be the policy of the courts in 1969, when the number of gasoline operated vehicles on our streets is many times what it was when the Michigan Supreme Court decided *Belisle*.

▪ With respect to the other cases cited by plaintiff in its memoranda in opposition to the defendant's motion, all are clearly distinguishable from the case before this Court. *Cleveland Electric Illuminating Co. v. Vanbenshoten*, 120 Ohio St. 438, 166 N.E. 374 (1929), cited by plaintiff at page three of his original

memorandum in opposition to defendant's motion, along with *Rognon v. City of Zanesville*, 24 Ohio App. 536, 157 N.E. 299 (1926), are both among the cases listed in the 39 OHIO JUR.2d, *Negligence* § 75 (1959) statement to the effect that these are older cases which do not represent the prevailing Ohio view, referred to above in this opinion. In addition, the statement in the *Vanbenshoten* case regarding attractive nuisance was not essential to the holding in the opinion, and is clearly *obiter dictum*. The case of *Stevens v. Ohio Fuel Gas Co.*, 193 N.E.2d 317 (Ct.C.P.Ohio 1960), while not antedating the *Harvey* case and its progeny, nevertheless is inapplicable to the issues at hand. *Stevens* involved a pipeline which was attached to a public bridge, and the principles and cases discussed in that common pleas court decision only have relation to dangerous conditions on *public* ways. In fact, at page 318 of 193 N.E.2d, the opinion concedes that the *Harvey* decision sets forth the law of Ohio, and goes on to distinguish the case before it on the grounds that the rejection of the attractive nuisance doctrine and the cases establishing that rejection in Ohio only apply to *private* property. The injuries in the instant case occurred upon the private property of defendant, and not upon a public way, so that the *Stevens* case would not control the one at bar even if it were of appellate stature. Finally, this Court has considered the California case of *Rowland v. Christian*, 69 Cal.2d 89, 70 Cal.Rptr. 97, 443 P.2d 561 (1968), cited by plaintiff in a second memorandum in opposition to defendant's motion to dismiss, and has concluded that *Rowland* would not reinforce plaintiff's position in the instant case even had it come from our own Supreme Court of Ohio. *Rowland* involved injury to a social guest in defendant's apartment from a sudden breaking of a faucet which had previously been reported

to the lessor by the tenant-defendant as being in a cracked condition. The Supreme Court of California held that there was an issue for the jury as to whether defendant's failure to warn plaintiff of the defective faucet before use by plaintiff constituted negligence by the defendant, and that the existence of this issue precluded summary judgment for defendant. In the present case, there was no defect or dangerous condition which rendered the gas tank different from the ordinary ones the plaintiff or others would encounter, whereas in *Rowland* the faucet was admittedly in a dangerous condition which might not be readily observable or expected.[2] Therefore, in the instant case there was no defect or extraordinarily dangerous condition which could be said to create a duty to warn the plaintiff about, or conversely, about which a failure to warn would present a jury question as to negligence.

■ In summary, the attractive nuisance doctrine not obtaining in Ohio, this case must be decided on defendant's motion according to recognized principles of negligence law. This Court simply cannot find that the defendant owed any *duty* to this plaintiff to lock its gas tanks, remove the gas between trips, or post a guard to keep persons away from its trucks. Containers of gas and vehicular gas tanks are commonly encountered unlike such hazards as blasting caps, and their potential hazard of injury only materializes after some deliberate intervening negligent act by the injured party in most cases, so that ordinary principles of tort law would not require all owners of gas tanks to warn and watch out for persons who might be injured through their own independent wrongful usage of the gasoline.[3] Therefore, the defendant cannot be said to be negligent in any respect in not performing a duty which Ohio law does not place on him under the facts alleged in

2. At page 98 of 70 Cal.Rptr., at page 562 of 443 P.2d, Mr. Justice Peters' opinion states that defendant's answer admitted the allegations of plaintiff that defendant had reported the defective condition of the faucet to the lessor at a time prior to plaintiff's injury.

3. See 39 OHIO JUR.2d, *Negligence* § 77 (1959).

plaintiff's complaint, nor *could* it realistically place upon him under the complex nature of our motorized society. The plaintiff not have stated a claim upon which relief may be granted by a court sitting in Ohio, the defendant's motion to dismiss is well taken and will be granted. An order will be entered in accordance with this opinion.