PASKVAN *v.* ALLOUEZ MINING CO.

1. TRIAL — CONTINUANCE — AMENDMENT—STIPULATIONS—PERSONAL INJURY ACTION.

On the trial of an action for the unlawful killing of an infant, where plaintiff asked for leave to amend the declaration so as to show that the accident occurred at a point five hundred feet north, instead of five hundred feet south, of a designated point, and it was permitted by the court and the amendment ordered to take effect

as of the date that the same was proposed, and the case
continued over the term upon the understanding that
plaintiff should file an amended declaration and that it
should be treated as amended from the date of the re-
quest, where the case was brought on by agreement for
trial at a subsequent term, and defendant's attorney asked
for further adjournment upon the ground that the amend-
ment had been made immediately before the call of the
case for trial, no error was committed in refusing to
grant a further continuance for the reason set up, the
defendant claiming to have been unable to prepare for
trial upon the amended pleading.

2. MASTER AND SERVANT—MINES AND MINING—MINORS.—LABOR LAW
   —EMPLOYMENT OF INFANT—DANGEROUS OCCUPATION—EVIDENCE.
   In an action for the death of an infant of 16 years
   of age, employed in defendant's mine, evidence con-
   sidered and held, to present an issue of fact as to the
   negligence of the parents and beneficiaries under the
   statute in consenting to and approving of the kind of
   work in which the infant was engaged. (Act No. 289,
   Pub. Acts 1909; 2 How. Stat. [2d Ed.] § 4009 *et seq.*).

3. SAME—TRIAL—CONTRIBUTORY NEGLIGENCE—PARENT AND CHILD—
   DEATH.
   In an action under the death act, a request to charge,
   offered by the defendant, based upon the theory that the
   parents, who were beneficiaries under the statute, par-
   ticipated in the violation of the statute, and were there-
   fore chargeable with negligence contributing to dece-
   dent's death, asking the court to instruct the jury that
   plaintiff could not recover for the benefit of the father
   and mother for any violation of the statute if they had
   consented to such employment, no limitation being in-
   cluded in the request in relation to the knowledge of the
   parents of the danger of the work in which he was en-
   gaged, was properly refused; the consent must be given
   understandingly, or it is no defense.

4. SAME—DEATH—CONTRIBUTION—PECUNIARY INTEREST.
   There was no error on the trial of such action in per-
   mitting the father to testify as to the amount of wages
   he was able to earn; that his eyesight was defective;
   that his wife was unable to work and the entire family
   in poor health; that he had several children, one of
   whom was blind; the testimony tended to present a

question to the jury under the statute as to the pecuniary loss sustained by the beneficiaries; the objection that the testimony tended to appeal to the sympathy of the jurors was not tenable.

Error to Keweenaw; Cooper, J., presiding. Submitted November 16, 1914. (Docket No. 50.) Decided April 6, 1915.

Case by Barbara Paskvan, as administratrix of the estate of Nick Paskvan, deceased, against the Allouez Mining Company for the unlawful killing of plaintiff's intestate. Judgment for plaintiff. Defendant brings error. Affirmed.

*Allen F. Rees* (*Rees, Robinson & Petermann,* of counsel), for appellant.

*Le Gendre & Driscoll,* for appellee.

MOORE, J. This action was brought for the death of a boy 16 years of age, who was found dead lying on the track in the tenth level north of shaft No. 1 in defendant's mine. This level was a permanent one, having a car track, and was used as a passageway for those who worked in the mine. No one saw the accident. When the boy was found there were large rocks lying on him. He was lying on his back on the car track. On the trial it was conceded the boy was working for defendant as a drill boy, and that he was instantly killed. From a judgment in favor of the plaintiff the case is brought here by writ of error.

Defendant is seeking to have the judgment reversed for errors of two classes:

(1) Errors in proceedings preceding the trial.
(2) Errors during the trial.

1. The proceedings before trial which are claimed to be erroneous are substantially as follows: After

the jury was called in May, 1912, counsel for plaintiff asked to amend the declaration by adding a third count, and proceeded to state in detail the contents of the proposed count. It recited the contents of the first count, and stated that the things therein done were contrary to the provisions of Act No. 285, Pub. Acts 1909 (2 How. Stat. [2d Ed.] § 4009 *et seq.*), and that the boy, when killed, was engaged in duties which may be, and are, considered dangerous to the lives and limbs of male persons under the age of 18 years. The oral statement was explicit and definite as to what it was desired the third count should contain, and covers more than two pages of the printed record.

The defendant objected to the amendment as stating a new cause of action, and that it was a surprise to defendant, leaving it with no opportunity to prepare its defense. The judge indicated his purpose to allow the amendment and to grant a continuance to defendant.

We now quote from the record:

"*Mr. Driscoll:* We also ask leave to amend—

"*Mr. Robinson:* They may amend by consent to change the place of the accident about 500 feet to the north instead of 500 feet to the south.

"*Mr. Driscoll:* If a continuance is taken on the ground of the amendment, we may be permitted to serve the amended declaration on defendant, adding the third and fourth counts, striking out the other counts which allege he is a man.

"*The Court:* I think that is a good suggestion.

"*Mr. Driscoll:* May it be considered that the amendment is made as of today?

"*The Court:* Yes; then you may file an amended declaration and the amendment is allowed as of today.

"*Mr. Petermann:* And the case goes over the term.

"The above-entitled cause was, by consent of counsel on both sides, placed on the calendar for the May term of the Houghton county circuit court, but, before being reached, was continued over the term on the

request of counsel for the plaintiff, and with the consent of counsel for the defendant. At the opening day of the August term of the circuit court for the county of Keweenaw, Hon. Patrick H. O'Brien, circuit judge, presiding, when the above-entitled cause was called for trial, the counsel for the defendant moved that the case be continued over the term on the ground that the plaintiff's amended and substituted declaration was not filed and served until August 24th, and that the defendant had no opportunity to plead to the amended and substituted declaration.

"As the cause could not be tried before Hon. Patrick H. O'Brien, circuit judge, a ruling, on the motion of defendant's counsel, was deferred until Wednesday, August 28, 1912."

The motion was then overruled. This is said to be reversible error.

The proposed amendment, as already appears, was stated in detail and became a matter of record. It was because of it that defendant was granted a continuance for the May term, and it was expressly agreed in open court that the amendment should be allowed as of May 23, 1912. We think the contention of defendant that the court erred in not granting a continuance over the August term is untenable.

2. Was there error during the trial? The case was submitted to the jury upon two counts. The first one was upon the common-law liability under the death act for negligence, and the third count for liability under the statute.

At the close of the case for the plaintiff, and again at the close of all the testimony, counsel moved the court to direct a verdict for the defendant upon the third count for the following reasons:

"The testimony shows conclusively that the boy was under the age of 18 years and employed as a drill boy, but also shows that the boy was so employed with the consent and approval of the parents, and the parents accepted from the boy his wages during the time he worked as a drill boy when he was under the

age of 18 years, and on that point our proposition is
that their acquiescence and approval of his employ-
ment was a participation by them in the violation of
the statute, and it was just the same as if they had
been guilty of contributory negligence; it is a par-
ticipation by them in the violation of the statute, and
will be governed by the same rules of law as if the
parents were guilty of contributory negligence, which
was a part of the negligence which caused the injuries
to the child."

The court declined to direct the verdict as re-
quested. This is said to be error.

Defendant preferred a request reading as follows:

"If you find from the testimony in the case that the
employment of the boy under the age of 18 years was
consented to, and acquiesced in by his father and
mother, then I charge you that the plaintiff cannot
recover for any violation of the statute mentioned in
the third count of plaintiff's declaration, as any such
recovery on this action is for the benefit of the father
and mother, and they are not permitted to consent to
the employment of the boy while under the age pro-
hibited by the statute, and to accept the benefits of
such employment caused by a violation of the statute,
and recover damages from the defendant company
because the statute was violated. They have partici-
pated in the violation of the statute, and are therefore
barred from any recovery in this action, if you find
that they consented to the employment of the boy by
the company while he was under the age of 18 years,
and received his wages while the statute was being
violated."

This request was not given.

The claim of counsel cannot be more concisely stated
than to quote from the brief:

"Upon this branch of the case we make two claims:
(1) The trial judge should have directed a verdict for
the defendant upon the third count upon the undis-
puted facts; or (2) in any event, he should have left
the question to the jury to say whether the parents
of the intestate consented to, and acquiesced in, a

violation of the statute, and if they did so, then the parents should not benefit by its violation.

"In suits brought under the death act for the killing of a child, the contributory negligence of the parents is imputed to the child to such an extent as to bar a recovery by them.    *    *    *

"In this case the pecuniary injury resulting from the intestate's death is to the father and mother, and they would be entitled to any damages recovered in the action.    The leading authority sustaining the above proposition is *Feldman* v. *Railway,* 162 Mich. 486 (127 N. W. 687)."

Other cases were cited which may be found in the brief.    Continuing, counsel say:

"We submit there can be no difference in law in a suit brought under the death act whether the real beneficiaries in the result of the case are barred from recovery because they have been guilty of contributory negligence themselves, as in the *Feldman Case,* or because they have actively participated in the wrongful act by permitting their minor son to be employed in violation of the statute and in receiving from him while so employed any wages he may have earned.    In other words, the parents permitted and encouraged their minor son to work underground as a drill boy, and during such time received his wages. After he is killed they should not be permitted to say to the company: 'Our son was working for you in violation of Act No. 285 of 1909 with our full knowledge and consent, and we received his wages while he was working for you in violation of that act, but that is entirely your fault and nothing for which we are to blame in any way.''

In view of the claim of counsel, it is important to see what testimony there is upon which to base the motion or to grant the request to charge, which we have quoted.    We quote all of the testimony upon that subject.    It was given by the father of the deceased upon his cross-examination:

"I never worked in the mine myself underground; I was six months lander.    The duties of a lander are

they get the rock from the shaft house or rock house, and push in and clean the rock out. How Nick happened to start to work at the Allouez mine, he get a job and want to work; he went and got the job himself; he was carry water on surface about two months at the Allouez; he work about a month in Ahmeek as drill boy before he came to the Allouez; I knew he was working underground, and my wife knew it; I don't know what a drill boy exactly got to do; I know they pick the drills and change the tools for the miners; I knew he had to go underground to do that; I never objected to Nick working underground."

It will be observed that the witness had not worked underground, and there is nothing to show he knew how the work was conducted there. It also appears that the knowledge of himself and wife was limited to the statement that the deceased as a drill boy had to be underground.

The third count of the declaration related to a violation of the terms of the statute. Working underground is not in terms forbidden by the statute. The language used as applicable to the instant case is:

"No male under the age of eighteen years shall be allowed to clean machinery while in motion, nor employed * * * in any other employment which may be considered dangerous to their lives and limbs."

Contributory negligence is usually a question for the jury. The court is here asked, by the motion to direct a verdict, to find it established as a matter of law. We do not think the testimony of Mr. Paskvan would justify such a course.

We are then confronted with the query whether the court, in view of the testimony of Mr. Paskvan, erred in refusing to give the request to charge which we have quoted. It will be observed that nothing is said in the request about the parents having knowledge that their minor son was employed in an employment

"which may be considered dangerous to lives and limbs," and that, having such knowledge, they consented thereto.

We do not find it necessary upon this record to say whether, in actions relying upon a breach of the statute, which was passed to safeguard the persons and lives of minors, the consent of the beneficiary under the death act would constitute contributory negligence which could be urged as a complete defense by the employer who violated the statute. We are clear, however, that the consent must be given understandingly and with knowledge that the work entered upon may be dangerous to lives and limbs. We think it equally clear the request to charge was not comprehensive enough in any view of the case to make a refusal to give it reversible error.

Mr. Paskvan in his direct examination was allowed to testify as to the wages he earned; that he had a sore eye; "my wife can't work very good; she got poor legs; the whole family is sickly;" the number of boys he had; and that one of them was blind in one eye. It is said this testimony tended to prejudice the jury and enlist unduly their sympathy in favor of the parents. No authority is cited in support of the contention that its admission was error.

In *Mulhall* v. *Fallon,* 176 Mass. 266 (57 N. E. 386, 54 L. R. A. 934, 79 Am. St. Rep. 309), it is said:

"In answer to the question to what extent, if at all, she was dependent upon her son for support, she answered that she was almost entirely dependent upon him for the last two years. This question was objected to, but was admissible. The extent to which particulars may be summed up in a general expression is a matter involving more or less discretion, and cannot be disposed of by the suggestion that the general expression involves the conclusion which the jury is to draw, or that it is law rather than fact. *Poole* v. *Dean,* 152 Mass. 589, 591 [26 N. E. 406]; *Wind-*
        185 Mich.—22.

*ram* v. *French,* 151 Mass. 547, 550, 551 [24 N. E. 914, 8 L. R. A. 750]. The question to what extent she was dependent upon her son called for details of fact in a perfectly proper way. Whether the answer showed a sufficient dependence to satisfy the statute remained for the jury to answer under the instructions of the' court. Even more plainly admissible were interrogatories whether the son contributed to her support, and, if so, how much. The plaintiff also testified that she 'had to turn around and go three miles to earn [her] support;' that she had a boy that was hard set to earn from 8d. to 1s. a day, and another boy an invalid. How far these statements should outweigh the others was for the jury. See *Houlihan* v. *Railroad,* 164 Mass. 555, 557 [42 N. E. 108]; *Daly* v. *Steel & Iron Co.,* 155 Mass. 1, 5 [29 N. E. 507]; *American Legion of Honor* v. *Perry,* 140 Mass. 580, 590 [5 N. E. 634]. Partial dependence for the necessaries of life would be enough, as it is made in terms by the English statute. 60 & 61 Vict. c. 37, § 7, cl. 2; *McCarthy* v. *Order of Protection,* 153 Mass. 314, 318 [26 N. E. 866, 11 L. R. A. 144, 25 Am. St. Rep. 637]; *Simmons* v. *White Bros.* (1899), 1 Q. B. 1005; *Atlanta & Charlotte, etc., Railway* v. *Gravitt,* 93 Ga. 369, 372 [20 S. E. 550, 26 L. R. A. 553, 44 Am. St. Rep. 145]."

In *Cincinnati, etc., R. Co.* v. *Altemeier,* 60 Ohio St. 10 (53 N. E. 300), the court said:

"In the case of parents it may be shown that they were in circumstances and health requiring that the deceased child should aid them by his services, not only during minority, but thereafter. In such cases the financial circumstances and health of the parents are very important, because a parent in poor circumstances would likely be compelled to depend largely upon his minor children for support, while a rich parent would receive no financial aid from his minor children, and, on the contrary, would find them a financial burden upon his hands. A rich parent whose child is a continual financial expense to him, and who has no reason to expect financial aid from such child, sustains little, if any, pecuniary injury from its death beyond the funeral expenses; while a poor parent, and especially if in bad health, might

reasonably expect substantial aid from his child, not only during its minority, but for years thereafter. * * *.

"Any fact which tends to show the amount of the pecuniary loss to the beneficiaries is competent evidence, whether it tends to increase or diminish the damages.

"The foregoing views are fully sustained by the following authorities, and cases therein cited: *Potter* v. *Railroad Co.*, 21 Wis. 372 [94 Am. Dec. 548]; *Potter* v. *Railroad Co.*, 22 Wis. 615; *Johnson* v. *Railroad Co.*, 64 Wis. 425 [25 N. W. 223]; *Thoresen* v. *Railroad Co.* [94 Wis. 129], 68 N. W. 548; *Lockwood* v. *Railroad Co.*, 98 N. Y. 523; [*Bridgen* v. *Osmun*], 92 Hun (N. Y.), 580 [36 N. Y. Supp. 1025]; [*Pressman* v. *Mooney*, 5 App. Div. (N. Y.) 121], 39 N. Y. Supp. 44; [*Lustig* v. *Railroad*, 65 Hun (N. Y.), 547], 20 N. Y. Supp. 477; *Railroad Co.* v. *Crudup*, 63 Miss. 291; Cooley on Torts (2d Ed.), §§ 271, 272; *Chicago* v. *Powers*, 42 Ill. 169 [89 Am. Dec. 418]; *Staal* v. *Railroad Co.*, 57 Mich. 239 [23 N. W. 795]; *Augusta R. Co.* v. *Glover* [92 Ga. 132], 18 S. E. 406; *Railroad Co.* v. *Leverett*, 48 Ark. 333 [3 S. W. 50, 3 Am. St. Rep. 230]; *Barley* v. *Railroad Co.*, 4 Biss. 430 [Fed. Cas. No. 997]; *Railroad Co.* v. *Lafferty*, 57 Fed. 536; *Haehl* v. *Railroad Co.* [119 Mo. 325], 24 S. W. 737; *Railroad Co.* v. *Dunden*, 37 Kan. 1 [14 Pac. 501]; *Opsahl* v. *Judd*, 30 Minn. 126 [14 N. W. 575]; *Cook* v. *Clay St. R. Co.*, 60 Cal. 604."

See, also, *Ewen* v. *Railway Co.*, 38 Wis. 613; *Johnson* v. *Railway Co.*, 64 Wis. 425 (25 N. W. 223); *Thompson* v. *Johnston Bros. Co.*, 86 Wis. 576 (57 N. W. 298); *Thoresen* v. *Railway Co.*, 94 Wis. 129 (68 N. W. 548); *Birkett* v. *Ice Co.*, 110 N. Y. 504 (18 N. E. 108).

We think the court did not err in admitting the testimony.

The other assignments of error have been considered, but we think it unnecessary to discuss them.

Judgment is affirmed.

BROOKE, C. J., and MCALVAY, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.