## WECHSLER *v.* MROCZKOWSKI.

1. BASTARDS—SUBSEQUENT MARRIAGE OF PARENTS—EVIDENCE OF
   PARENTAGE.
   The subsequent marriage of the parents of a bastard is an ac-
   knowledgment of parentage (CLS 1956, § 702.83).

2. SAME—LEGITIMACY OF CHILDREN—WEDLOCK—CONCEPTION.
   Public policy favors the legitimacy of children not only born
   in wedlock but even those conceived in wedlock.

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur, Bastards § 58.
[2] 7 Am Jur, Bastards § 14.
[2, 3] 7 Am Jur, Bastards § 19.
[4] 7 Am Jur, Bastards § 42 *et seq.*
[5] 16 Am Jur, Death § 94 *et seq.*
[6] 16 Am Jur, Death § 222.
[8] 17 Am Jur, Discovery and Inspection § 90.

3. SAME—CONCEPTION DURING WEDLOCK—PRESUMPTION OF LEGITI-
MACY.
    A child conceived in wedlock is presumed legitimate even though
    born after termination of the marriage.

4. DEATH—PRESUMPTION OF LEGITIMACY OF CHILD—REBUTTAL.
    Child who was born 8 months and 26 days after decree of divorce
    between parents was granted is entitled to have placed before
    the jury in action under death act for father's death the
    presumption of her legitimacy subject to any rebuttal the
    defendant might offer (CL 1948, §§ 691.581, 691.582).

5. SAME—ACTION—DATE OF DEATH.
    A child's right of action under the wrongful death statute must
    be determined as of the date of the demise of her father (CL
    1948, §§ 691.581, 691.582).

6. SAME—MITIGATION OF DAMAGES.
    The fact that support, education, or other gratuities are received
    from third persons by survivors of persons for whose death
    an action is brought under the death act does not mitigate the
    damages (CL 1948, §§ 691.581, 691.582).

7. SAME—DAMAGES—SUBSEQUENT ADOPTION.
    The fact that children who survived plaintiff's decedent
    were adopted some 5 months after his death neither barred
    nor mitigated the claim for damages under the death act, but
    was a fact which the jury could properly take into account
    in its determination of the pecuniary injury (CL 1948, §§
    691.581, 691.582).

8. DISCOVERY—DISCRETION OF COURT.
    The denial of plaintiff's motion for discovery on grounds of
    failure of timely filing held, well within discretion of the
    pretrial judge, under record presented (Court Rule No 35,
    §§ 5, 6 [1945], as added).

Appeal from Wayne; Murphy (George B.), J.
Submitted October 10, 1957. (Docket No. 36, Cal-
endar No. 47,247.) Decided March 6, 1958.

Case by Louis Wechsler, administrator of the es-
tate of James H. Wilson, deceased, against Walter
Mroczkowski for damages under the death act.
From a judgment in an amount not representative

of sums necessary for support of minor children, plaintiff appeals. Reversed and remanded.

*Robbins, Wechsler & Lebenbom* (*Arthur L. Robbins*, of counsel), for plaintiff.

*Carl F. Davidson* (*Roy P. Nelson*, of counsel), for defendant.

EDWARDS, J.

"We want to say to the child that if the world or the world's law has not been his friend in the past, it shall be now."[*]

James Wilson met an unfortunate death at the age of 32. He was killed in an automobile accident on July 5, 1953, while changing a tire at 3 o'clock in the morning on the right-hand shoulder of US-24, Telegraph road, in Monroe county. He was crushed against his own automobile when a car driven by defendant Mroczkowski ran into him.

In this proceeding the administrator of the estate of the deceased seeks recovery on behalf of his estate and on behalf of 2 minor children (alleged to be the daughters of deceased), claiming that his death and their consequent loss of support was due to the negligence of defendant. Prior to trial defendant admitted liability, and the case was submitted to a Wayne county circuit court judge and jury on issues pertaining to damages.

While Mr. Wilson died young, this record indicates that he had lived a more eventful life than most, and since the basic legal issues presented on appeal involve the administrator's claim for loss of support as to 2 minor children, we are required to recite a number of these events.

The names of the 2 children for whom support is claimed are Eva Luveda Spelta and Sonya Spelta.

[*] 186 Hans. Parl. Deb., 4th series, 1262. (Obvious error corrected.)

Eva was born June 29, 1949. Her parents, the deceased, James Wilson, and Martha Wilson were married October 3, 1950. On December 4, 1950, in Davidson county, Tennessee, James Wilson was granted an uncontested divorce from Martha Wilson, the decree granting him care and custody of the minor child Eva Luveda, with rights of visitation to Martha. Eva Luveda was the only child mentioned in the decree.

On August 31, 1951, 8 months and 26 days* after the divorce decree, Sonya was born. Mrs. Spelta testified during the course of this trial that she had separated from Mr. Wilson in October of 1950. She also testified that up to the divorce she and deceased, James Wilson, lived in the same town, with "full opportunity for contact and communication." The trial court apparently ruled out other proffered testimony bearing on paternity, and no other specific evidence on this matter was brought into the record by either party.

The record likewise discloses that after the deceased's divorce from Martha Wilson he married one Vivian Burton who subsequently died; and then married one Joyce Carlis who obtained a divorce from him approximately 10 days prior to his death.

Meantime, on December 7, 1951, Martha Wilson married Henry Spelta, her present husband, and on December 7, 1953, 5 months after James Wilson's death, Mr. Spelta adopted Eva Luveda and Sonya. This latter fact was placed in the record by defendant's question to Mrs. Spelta which she was permitted to answer over plaintiff's strenuous objection.

This case was tried before a jury in Wayne circuit court, with Circuit Judge George B. Murphy presiding. In his charge to the jury, Judge Murphy

---

* This computation was apparently accepted by the parties and the court below. Actually, the figures should be 8 months, 27 days.

recited defendant's admission of negligence and his admission of liability for the cost of decedent's burial in the sum of $402.92. He charged "there is no competent evidence in this record that Sonya is the legitimate child of James H. Wilson, the deceased," and further, "when you come to the position of assessing damages you can disregard Sonya because this record does not show that Sonya is the child of the deceased."

It appears that as to Eva, the judge's charge instructed the jury, in the event they got to this question, to determine how much damages by way of support Eva would be entitled to between the date of her father's death and the date of December 7th of the same year when she and her sister were adopted, and further to make a separate record of the amount of damages, if any, they found as to Eva from December 7th down to date. The jury returned a verdict in favor of plaintiff in the total sum of $652.92, no separate items being disclosed on this record.

The facts as recited raise 2 questions which we must determine on appeal. As stated by plaintiff, they are:

"Is Sonya, born to Martha Wilson, 8 months and 26 days after Martha's divorce from James Wilson, presumed to be the legitimate child of James Wilson?

"Did the adoption of the minor children by Henry Spelta, 5 months after decedent's death, result in such changed circumstances as to relieve defendant thereafter from damages for the children's loss of support?"

This action is brought under the Michigan statute entitled actions for wrongful death. CL 1948, §§ 691.581, 691.582 (Stat Ann 1957 Cum Supp §§ 27.711, 27.712). As a consequence the children's

claims were to be determined by answers to 2 questions: (1) was each in the statutory class of "next of kin?" and (2) if so, how much, if any, "pecuniary injury resulting from such death" did each suffer?

It is apparent that as to Eva Luveda the court recognized the acknowledgment of parentage represented by the marriage of James and Martha Wilson. CLS 1956, § 702.83 (Stat Ann 1957 Cum Supp § 27.3178[153]).

As to Sonya, the facts in the record establish her birth 8 months and 26 days after a decree of final divorce between James and Martha Wilson.

The trial judge refused to allow the mother to testify as to pregnancy prior to divorce, and as to contributions toward Sonya's support by James Wilson after her birth. He then refused a requested instruction that a child born within 8 months and 26 days of the termination of marriage is presumed to be the legitimate child of the parents.

We believe he erred in all of these regards. As to the last of these issues which is brought to us on appeal, the rule is well-established in this and other jurisdictions. On grounds of public policy, the law favors legitimacy of children born in wedlock. This is an ancient rule—a maxim of Roman law—and it has been extended to cover children conceived in wedlock. 7 Am Jur, Bastards, § 14.

Montesquieu wryly observed: "The wickedness of mankind makes it necessary for the law to suppose them better than they really are. * * * Thus we judge that every child conceived in wedlock is legitimate; the law having a confidence in the mother, as if she were chastity itself." Montesquieu, The Spirit of the Laws, bk 6, ch 17.

In this State, like in most, the presumption has been extended as Montesquieu indicates to any child conceived in wedlock. *People* v. *Bedell,* 342

Mich 398; 10 CJS, Bastards, § 3, subd c, p 25. Birth after termination of marriage.

See, also, *People* v. *Case,* 171 Mich 282.

The child Sonya was entitled to have the presumption of her legitimacy placed before the jury by the court, subject, of course, to any rebuttal which defendant might offer.

What has been said requires reversal and remand for new trial of this case. But prior to such retrial, we feel impelled to comment upon the second question bearing on the effect, if any, of the post-death adoption. We believe the child's right of action under the wrongful death statute must be determined as of the date of demise of her father. Whatever means are subsequently employed to meet the exigencies created by death do not act to relieve the negligent cause of the death from liability to a child for loss of support naturally and legally due it from its own father. CL 1948, §§ 691.581, 691.582 (Stat Ann 1957 Cum Supp §§ 27.711, 27.712); *The City of Rome,* 48 F2d 333; 30 ALR 121.

No cases relating to barring or mitigation of damages by post-death adoption are cited to us. We are asked by counsel for appellee to extend to the instant situation the Michigan cases wherein Michigan, among a small minority of the States, has held that remarriage of a spouse acts to mitigate or bar damages under the statute pertaining to actions for wrongful death. *Jones* v. *McMillan,* 129 Mich 86; *Hewitt* v. *East Jordan Lumber Co.,* 136 Mich 110; *Sipes* v. *Michigan Central R. Co.,* 231 Mich 404; *Stuive* v. *Pere Marquette R. Co.,* 311 Mich 143.

This we decline to do. On grounds of public policy, we decline to hold post-death adoption as a bar to a child's claim for pecuniary injury due to the wrongful death of a parent. Such a rule would

sanction a substantial economic barrier to adoption of children wrongfully orphaned.

Further, in Restatement of Torts we find this statement of the rule:

"The fact that support, education or other gratuities have been received from third persons, although induced by the death, or that the survivors will be cared for by third persons, does not mitigate the damages." 4 Restatement, Torts, Damages, § 925 *h*.

We do not, however, consider it error for the fact of adoption to have been admitted in evidence. While we feel that such an event neither barred nor mitigated this claim, it was 1 of the many facts which the jury could properly have taken into account in its determination of "pecuniary injury." *Paskvan* v. *Allouez Mining Co.,* 185 Mich 329; *Peklenk* v. *Isle Royale Copper Co.,* 187 Mich 644; 25 CJS, Death, §§ 102, 114; Damages: Effect of Subsequent Events on Damages for Wrongful Death, 10 Okla L Rev 187.

The rule in this regard was thus stated by Justice Campbell in an early case:

. "The object of the statute is to give such pecuniary damages, and no more, as the widow and next of kin have suffered by the loss of the person killed. In many cases there is no such immediate dependent connection between the deceased and his kindred that their loss is more than problematical. In such case their poverty and his industry or wealth can furnish no accurate guidance to a result. If they had no legal claims upon him, and received no reliable help from him, his life may have had small, if any, pecuniary value to them. But where the head of a family is taken away, there is a distinct relation between the family circumstances and the family supporter. In such a case we think the fullest insight into the family circumstances is of value in

determining to what extent they are injured by the loss of their head. No special instructions were asked whereby the attention of the jury might be confined to the proper line of inquiry. If this had been desired, no doubt the judge would have given it. Without it the jury were at liberty to use their best judgment in drawing their own deductions." *Staal* v. *Grand Rapids & Indiana R. Co.,* 57 Mich 239, 245.

The denial of appellant's motion for discovery on grounds of failure of timely filing was, on the facts disclosed in this record, well within the discretion of the pretrial judge. Court Rule No 35, §§ 5, 6 (1945), as added.*

Reversed and remanded for new trial on issue of damages. Costs to appellant.

KELLY, SMITH, BLACK, and VOELKER, JJ., concurred with EDWARDS, J.

DETHMERS, C. J., and CARR, J., concurred in the result.

KAVANAGH, J., took no part in the decision of this case.

---

* See 334 Mich xl.—REPORTER.