## BURNS v. VAN LAAN.

1. DEATH—DAMAGES—RECOVERY BY PERSONAL REPRESENTATIVE.

    Whatever damages a wife may have suffered, or may hereafter suffer, in consequence of her husband's death, became suable and recoverable only by action brought in the name of the personal representative of her husband's estate under the death act, as amended, in view of the exclusive provisions of that act and interpretations thereof by the Supreme Court (CL 1948, §§ 691.581–691.583).

2. SAME—DAMAGES—UNITARY ACTION—CONSORTIUM—EQUALLY DIVIDED COURT.

    The death act, as amended, seeks to avoid a multiplicity of suits and provides a unitary action for death and survival in the plaintiff personal representative who is a statutory trustee for all eligible beneficiaries of such unitary right and exclusively entitled to recover in their behalf all legally recoverable damages each has suffered on account of the wrongful death, the court being equally divided as to whether loss of consortium may be included within the term "pecuniary injury" when the decedent is a spouse (CL 1948, §§ 691.581–691.583).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 16 Am Jur, Death § 145 et seq.

Appeal from Kent; Vander Wal (John H.), J. Submitted June 7, 1962. (Docket No. 23, Calendar No. 49,322.) Decided September 10, 1962.

Case by E. Lois Burns against George J. Van Laan, Vern Sturges, and Kent County Oil Company, a Michigan corporation, for loss of consortium of husband killed in collision of motor vehicles. Previously judgment had been entered against defendant Van Laan in suit under the death act. Cause dismissed on motions. Plaintiff appeals. Affirmed.

*Vander Veen, Freihofer & Cook (Donald F. Oosterhouse,* of counsel), for plaintiff.

*Hayes & Davis (Kenneth T. Hayes,* of counsel), for defendant Van Laan.

*Cholette, Perkins & Buchanan (Don V. Souter,* of counsel), for defendants Sturges and Kent County Oil Company.

BLACK, J. Plaintiff's husband lived approximately 24 hours following mortal injury caused by defendants' wrongful act. Suit under the death act[1] resulted in a judgment against the defendants, in favor of the decedent's personal representative, in the sum of $25,000. The judgment was duly satisfied. Distribution of the proceeds was made as provided by section 2 of the wrongful death statute (CL 1948, § 691.582 [Stat Ann 1959 Cum Supp § 27.712]), the present plaintiff as widow being one of the beneficiary-distributees. She subsequently filed this suit against the same defendants claiming in her own right that defendants' wrongful act caused an actionable loss of consortium. Judge Vander Wal, of the

---

[1] CL 1948, §§ 691.581–691.583 (Stat Ann 1959 Cum Supp §§ 27.711–27.713).—Reporter.

Kent circuit, granted defendants' motion to dismiss. He ruled:

"Therefore, the court holds that (1) damages for loss of consortium due to a negligent injury is recognized in this State; (2) no cause of action lies for loss of consortium in instantaneous wrongful death; (3) that such a cause of action, if any, apparently may be and should be included in the wrongful death action under the wrongful death act. And, therefore, since plaintiff did not include these damages to her in her claim here as administratrix under the wrongful death act, there is no authority for allowing her to file for those same damages in a separate action.

"Plaintiff is claiming in this case, not damage for the brief 24-hour period but for damages for the loss of consortium after death for the life expectancy of the husband. Therefore, for the reasons above stated, the motions to dismiss are herein granted."

We agree with Judge Vander Wal's conclusion (3) that whatever compensatory damages plaintiff may have suffered, or may hereafter suffer, in consequence of her husband's death, became suable and recoverable as against the defendants only by action brought in the name of the decedent's personal representative under the death act as amended in 1939.[2] Such ruling is dictated particularly by the exclusive provisions of the death act aforesaid and the interpretation thereof made in *MacDonald* v. *Quimby,* 350 Mich 21.

We said, in *MacDonald* (p 29):

"The statute clearly shows that the legislature provided for 1 action for wrongful death, to be commenced by the administrator or administratrix, thus avoiding a multiplicity of suits. We find that the

[2] See, in accord, *Hoekstra* v. *Helgeland,* 78 SD 82 (98 NW2d 669); also District Judge Freeman's carefully considered opinion in the unreported case of *Miracle* v. *Ellis Trucking Co.* (ED Mich SD), February 3, 1961, No 20423.

plaintiff-administratrix in this case occupied a trust relationship toward all who had a claim for damages against defendants, and we quote with approval from *Wiener* v. *Specific Pharmaceuticals, Inc.*, 298 NY 346, 350 (83 NE2d 673) ; and *Janes* v. *Sackman Bros. Co.* (CCA2), 177 F2d 928."

*MacDonald's* approval of what was said by the court of appeals of the second circuit fully reflects our considered holding that the act of 1939 "created a unitary action for death and survival" and that a decedent's personal representative, suing thereunder, becomes a statutory trustee for *all* eligible beneficiaries of such unitary right and is exclusively entitled to recover, in their behalf, *all* legally recoverable damages each has suffered on account of the wrongful death. It follows that *all* damages suffered by this plaintiff widow on account of the wrongful and mortal injury to her husband became recoverable not by her but by such personal representative in her behalf. Such is the essence of *MacDonald's* ruling.

Now for the ultimate question: In the like case of *Lampe* v. *Lagomarcino-Grupe Company*, 251 Iowa 204, 207 (100 NW2d 1, 3, 4), the court unequivocally held, and we agree, that "neither husband nor wife may sue in an individual capacity for the damages resulting from such wrongful death (citing authorities)." The court then referred to a previously cited authority (*Acuff* v. *Schmit*, 248 Iowa 272 [78 NW2d 480]) and reasoned to what in our view was the only proper conclusion (pp 208, 209) :

"From *Acuff* v. *Schmit, supra,* it will be seen we are committed to the rule that a wife has a cause of action against one who has wrongfully or negligently so injured her husband as to deprive her of his consortium. It is clear, too, from a reading of the authorities, that the damages must stop when death occurs. In this case, plaintiff's husband sur-

vived the collision only a few minutes. This, then poses the question, did plaintiff prove damages were sustained by her in any amount capable of calculation? We hold she did not, and that the trial court was right in sustaining defendant's motion for judgment notwithstanding the verdict.

"Appellant asks: 'Can it be fairly said  *  *  * that the wife of the husband who was incapacitated, sustained a loss and the widow of the deceased husband did not? Was the wife with the emasculated husband worse off after her husband's accident than was the widow after her husband's death?'

"The answer is that each had her remedy. The widow, as in this case, had, through the estate, the benefit of an action for the death of her husband. [Iowa Code Ann] § 635.9. By its verdict the jury, on count 1, undertook to compensate plaintiff, through the executrix as a proper conduit, for all the loss she sustained."

By *MacDonald's* ruling the judicial aim was that of "avoiding a multiplicity of suits" where death has been caused wrongfully. Too, we aimed toward due assurance that interested parties may sue, defend, negotiate, settle, receive, and pay in reliance upon the exclusiveness of such statutory right of action. The *Lampe Case* is in full accord.

For pertinent rules disclosing what is *not* recoverable by a surviving widow under our form of Lord Campbell's act, see 16 Am Jur, Death, § 199, p 133; 17 CJ, Death, § 207(b), p 1333; 25 CJS, Death, § 104, p 1254, and the leading case of *Michigan Central R. Co.* v. *Vreeland,* 227 US 59 (33 S Ct 192, 57 L ed 417, Ann Cas 1914C, 176). Reference, with intent of adoption thereof, is made to the following continued portion of the supreme court's opinion of *Vreeland* (pp 71, 72):

"A pecuniary loss or damage must be one which can be measured by some standard. It is a term employed judicially, 'not only to express the charac-

ter of the loss of the beneficial plaintiff which is the foundation of the recovery, but also to discriminate between a material loss which is susceptible of pecuniary valuation, and that inestimable loss of the society and companionship of the deceased relative upon which, in the nature of things, it is not possible to set a pecuniary valuation.' Patterson, Railway Accident Law, § 401.

"Nevertheless, the word as judicially adopted is not so narrow as to exclude damages for the loss of services of the husband, wife, or child, and, when the beneficiary is a child, for the loss of that care, counsel, training, and education which it might, under the evidence, have reasonably received from the parent, and which can only be supplied by the service of another for compensation.

"In *Tilley* v. *Hudson River R. Co.,* 24 NY 471, 476, and 29 NY 252, the court stated that 'the word "pecuniary" was used in distinction to those injuries to the affections and sentiments which arise from the death of relatives, and which, though grievous and painful to be borne, cannot be measured or recompensed in money. It excludes, also, those losses which result from the deprivation of the society and companionship, which are equally incapable of being defined by any recognized measure of damages.'

"To the same effect are the cases of *Schaub* v. *Hannibal & St. J. R. Co.,* 106 Mo 74 (16 SW 924), which was followed by the circuit court of appeals for the eighth circuit in *Atchison T. & S. F. R. Co.* v. *Wilson* (CCA 8), 48 F 57; *Lett* v. *St. Lawrence & O. R. Co.,* 11 Ont App 1; *Pennsylvania Railroad* v. *Goodman,* 62 Pa 329, 339; *Louisville, N. A. & C. R. Co.* v. *Rush,* 127 Ind 545 (26 NE 1010); Tiffany, Death by Wrongful Act, §§ 154 to 162, inclusive; Patterson, Railway Accident Law, §§ 401 to 406."[3]

[3] See our pursuit of *Vreeland's* precepts in *Lincoln* v. *Detroit, & M. R. Co.,* 179 Mich 189, 204 (51 LRA NS 710); *Fors* v. *LaFreniere,* 284 Mich 5, 12, and *Sipes* v. *Michigan Central R. Co.,* 231 Mich 404, 407.

Having so concluded, and then having declared that "no hard and fast rule by which pecuniary damages may in all cases be measured is possible", the supreme court went on to criticize, as reversible error, the following instruction to the jury (p 73):

"In addition to that, independent of what he was receiving from the company, his employer, it is proper to consider the relation that was sustained by Mr. Wisemiller and Mrs. Wisemiller, namely, the relation of husband and wife, and draw upon your experiences as men and measure, as far as you can, what it would have reasonably been worth to Mrs. Wisemiller in dollars and cents to have had, during their life together, had he lived, the care and advice of Mr. Wisemiller, her husband."

Of the *Vreeland Case* the district court for the District of Columbia said (*Ciarrocchi* v. *James Kane Co.,* 116 F Supp 848, 850):

"At common law, a wife has no right of action for loss of consortium or other injury on account of the *death* of her husband by wrongful act. The *Hitaffer Case [Hitaffer* v. *Argonne Co., Inc.,* 87 App DC 57, 183 F2d 811, 23 ALR2d 1366] only gave her a right of action for loss of consortium in case of *injury.* That no civil action can be maintained at common law for wrongful *death* is noted by a statement in the leading case of *Michigan Central R. Co.* v. *Vreeland* (1913), 227 US 59, 67 (33 S Ct 192, 195, 57 L ed 417, Ann Cas 1914C, 176), that, 'Nothing is better settled than that, at common law, the right of action for an injury to the person is extinguished by the death of the party injured.' The doctrine has been considered as derivative of: the common-law maxim, 'a personal right of action dies with the person'; a human life cannot be evaluated in terms of money; and, where a wrongful death is merged with a felony, the civil wrong is merged with the crime. However open the doctrine may be to criticism, its existence

and rigidity may not now be questioned." (Italics by district court.)

Turning now to our own history of pertinent construction of Michigan's century-old death act: Speaking in 1885 of a case where the wrongfully taken decedent left 3 dependent children and a widow "not their mother," this Court said, unanimously with respect to the statutory power bestowed on juries (the power to "give such damages as they shall deem fair and just, with reference to the *pecuniary injury resulting from such death*") :

"Courts should not allow juries to give anything that goes beyond a fair *pecuniary compensation* based on the *actual pecuniary loss*." *Staal* v. *Grand Rapids & Indiana R. Co.*, 57 Mich 239, 246.[4]

The statute has been accepted thus by the legislature—also by this Court with continued unanimity —ever since; a matter of 77 years. Nevertheless, plaintiff unabashedly proposes that we should write new interpretive words into such venerably interpreted statute; words which would enable a widow, or surviving husband for that matter, to recover more than that "actual pecuniary loss" the statute —by word of this Court—says is the sole basis for her recoverable right.[5]

Two reasons for plaintiff's said proposal are proffered in support. One is that a similarly situated

---

[4] This case of *Staal* has since been the "Bible," so to speak, when questions of evidence and measure of pecuniary loss have arisen in cases where a husband or father has been wrongfully taken. See quotation thereof in the *Wechsler Case (Wechsler* v. *Mroczkowski)*, 351 Mich 483, at 490, 491.

[5] "When the legislature has spoken, and declared one interest superior to another, the judge must subordinate his personal or subjective estimate of value to the estimate thus declared. He may not nullify or pervert a statute because convinced that an erroneous axiology is reflected in its terms. Even when the legislature has not spoken, he is to regulate his estimate of values by objective rather than subjective standards, by the thought and will of the community rather than by his own idiosyncrasies of conduct and belief." Cardozo, "The Growth of the Law", Yale University Press, pp 94, 95.

widow "should be allowed a common-law remedy for such loss as a natural and logical extension of our recent ruling in *Montgomery* v. *Stephan,* 359 Mich 33." The other, upon reference to a Georgia case, is that "a permissible policy of the legislature" should be fully effectuated "by making homicide expensive." (Both quotations are taken from Justice Souris' opinion.)

Let us examine the proposal. So far, save when the legislature ordains otherwise (like say in the dramshop act[6]), the policy of Michigan's law of damages in negligence cases has been compensation —not punishment. For wrongful death cases this was made clear in the *Staal Case, supra.* So if Georgia permits recovery of punitive damages in negligence cases, so Georgia has that right; yet we liking our own policy of compensatory damages need not follow her guide. What our legislature *may* do as "a permissible policy," that is, extend to the statutory right of action the result of the ruling in the *Montgomery Case,* has not yet been done. When and if that is done will be time enough for judicial talk about "making homicide more expensive" than it is.

The whole argument for and against "extension of our recent ruling in *Montgomery* v. *Stephan"* adds up to this: Some in today's situation of longtime and steadily unanimous construction of an old statute would "extend" the power of the judiciary to rewrite that statute so that it means what in *Staal* we said it does not mean. Others—the writer being one— would respect the almost conclusive force of the doctrine of "legislative acquiescence" where, as here, such acquiescence is proven by many years of unanimous interpretation; the legislature meanwhile remaining acquiescently compliant.

---

6 CL 1948, § 436.22, as amended by PA 1961, No 224 (Stat Ann 1961 Cum Supp § 18.993).—Reporter.

In that great field where the common law grows or withers the judiciary is the primary àctor. The judiciary did act upon that precept in the *Montgomery Case*. But here we deal with a right of action, new in every respect and unknown to the common law, existing only by statute. By the admittedly exclusive nature of that right the beneficiaries of the cause are restricted to a statutory class and are permitted through the decedent's personal representative to recover a specially compensatory measure of damage. The *statute* provides the widow's remedy for the wrongful taking of her husband; whereas the *common law* provides the wife's remedy where the husband is actionably disabled with resultant loss to her.

A further comparison of the 2 cases—*Montgomery* and Burns—may enlighten those who would "extend" *Montgomery* to Burns. In *Montgomery* the wife was left for the actuarial duration with a crushing burden over and above the burden she would have carried had death of her husband ensued. According to the declaration the husband was made a mental and physical cripple the wife would have to care for; for such duration. Here the tragedy of death has eliminated that burden and has provided for this widow the special compensatory award she has already received. The distinction should be kept in mind, as most lawyers skilled in the field of negligence law do with attentive care. A serious personal injury case (*Montgomery* for example), other factors such as liability being the same, is usually fraught with potentially heavier damages than if the same injury had been mortal. There is a good reason for the distinction so long as our death act continues to limit recovery to that "fair pecuniary compensation" the beneficiaries are shown as having suffered.

Other considerations aside, there is a forcefully supervening reason why *Montgomery's* rule of the common law should not be "extended" to and incorporated in Michigan's wrongful death statute. The majority opinion of *Montgomery* was planted upon the reasoning of *Hitaffer* v. *Argonne Co., Inc.*, 87 App DC 57 (183 F2d 811, 23 ALR2d 1366), certiorari denied 340 US 852 (71 S Ct 80, 95 L ed 624). Valiant efforts to support and criticize such reasoning were made in the opponent opinions of Justices Talbot Smith and Carr. The case was referred to, in the 2 opinions, no less than 13 times. Yet *Hitaffer* has been questioned (*Brown* v. *Curtin & Johnson, Inc.*, 95 App DC 234 [221 F2d 106]), and then overruled (*Smither and Company* v. *Coles*, 100 App DC 68 [242 F2d 220]; certiorari denied 354 US 914 [77 S Ct 1299, 1 L ed 2d 1429]), by the very court of its origin, with respect to this distinct point of "extension" of its doctrine. Hence, it is safe only to say that the state of the law in the courts of the District of Columbia is as related in *Ciarrocchi* v. *James Kane, Co., supra; O'Neil* v. *Shelton Bros. Trucking Co.* (DC DC), 116 F Supp 654, and quotation of *O'Neil* in *Brown* v. *Curtin & Johnson, Inc., supra.* Such courts stand today for no "extension" of *Hitaffer.*. See quotation of *Ciarrocchi, ante,* p 491.

To summarize:

1. "Pecuniary injury" is not, by recognized authority construing conventional death statutes, interpreted as including loss by the widow of what former Justice Talbot Smith calls "conjugal fellowship,"[7] suffered from and after the husband's death.

2. The right declared by *Montgomery* in favor of Mrs. Burns abated when her husband died and was superseded by a new and distinct right of recovery, by her through Mr. Burns' personal representative,

---

[7] *Montgomery* v. *Stephan, supra,* at page 36.

"with reference to the pecuniary injury" (CL 1948, § 691.582 [Stat Ann 1959 Cum Supp § 27.712]) shown in her behalf when the first case, brought by the husband's fiduciary, was tried and determined.

To avoid possible misunderstanding of these rulings it is stressed that we are applying standard rules of damages as determinative of the extent of recovery permitted when the right of action provided by Michigan's death statute is asserted in behalf of a surviving widow. Other rules, not presently material, may apply when the statutory beneficiary is a surviving husband, a surviving parent or parents (see *Wycko* v. *Gnodtke*, 361 Mich 331 and cases cited with approval in *Paskvan* v. *Allouez Mining Co.*, 185 Mich 329, 337–339), a surviving child, or some other survivor belonging to the declaredly eligible class. Note how *Vreeland* treats these distinctions, pp 73, 74.

Further, and in similar avoidance, it is emphasized that this opinion does not limit or otherwise restrict that broad rule of evidence which, in cases of wrongful death, is and has been requisite to proper understanding by the jury of the pecuniary loss it must appraise. As approved in *Paskvan* at page 339, with multitudinous citations given in support including the *Staal Case, supra,* it is true generally that:

"Any fact which tends to show the amount of the pecuniary loss to the beneficiaries is competent evidence, whether it tends to increase or diminish the damages.";

also that, as taken from Thompson on the Law of Negligence in *Peklenk* v. *Isle Royale Copper Co.*, 187 Mich 644, 649, 650:

"In jurisdictions where the statute makes the recovery turn upon the dependency of the beneficiaries

on the deceased for support, the circumstances, age, health, and means of support of the beneficiaries may be proved, for the purpose of showing whether such beneficiaries would in all likelihood have received financial aid from the deceased."

For echo of these evidentiary precepts, see *Wechsler* v. *Mroczkowski,* 351 Mich 483, 490, 491.

Judgment of dismissal affirmed. Costs to defendants.

CARR, C. J., and DETHMERS and KELLY, JJ., concurred in result.

SOURIS, J: *(concurring).* Plaintiff sued in her individual capacity to recover damages for loss of her husband's consortium resulting from his death allegedly caused by defendants' negligence. Although a $25,000 judgment had previously been obtained against defendants in part for plaintiff's benefit under our wrongful death act,* she claims that damages for loss of her husband's consortium are not recoverable under that act and, therefore, that she should be allowed a common-law remedy for such loss as a natural and logical extension of our recent ruling in *Montgomery* v. *Stephan,* 359 Mich 33, in which we recognized the right of a wife to recover damages at common law for such loss resulting from the negligent injury of her husband which does not result in death.

Defendants assert that damages for loss of consortium resulting from a death caused by wrongful act or negligence are recoverable, if at all, exclusively under our death act and, hence, that plaintiff's action was properly dismissed by the trial court on their motion. I agree, for the reasons set forth in the forepart of Mr. Justice BLACK's opinion, that

---

* PA 1848, No 38, as amended (CL 1948, § 691.581 *et seq.* [Stat Ann 1959 Cum Supp § 27.711 *et seq.*]).

this action was properly dismissed, the death act providing plaintiff's exclusive remedy for whatever actionable losses she suffered as a result of her husband's death.

However, I believe that plaintiff was entitled to claim and recover damages for loss of her husband's consortium in the death action. Admittedly, there is a split of respected authority in our sister States which have pertinent statutory language identical or similar to ours on whether such losses are compensable to a surviving spouse in a death action. Where statutes limit recovery, as does ours, to "pecuniary" injuries, some courts have held that damages to a surviving spouse may be awarded only for so-called economic losses,—that is, for loss of a husband's support or of a wife's services. Such, indeed, was the United States supreme court's interpretation of the Federal employers' liability act (which did not even contain language of limitation like "pecuniary injury") in the case of *Michigan Central R. Co.* v. *Vreeland*, 227 US 59 (33 S Ct 192, 57 L ed 417, Ann Cas 1914C, 176), decided in 1913 and arising in Ohio. As is clearly evident from Mr. Justice Black's quotation from *Vreeland*, the controlling factor was whether the loss could be measured by some standard,—was it possible to set a pecuniary valuation upon the loss? Some courts have held that the loss of a deceased spouse's society and companionship is incapable of valuation "by any recognized measure of damages" (*Vreeland, supra,* p 71). But other courts have not so quickly relieved the wrongdoer of liability for such losses notwithstanding the difficulty of the task of valuation. Reference will be made to decisions from these courts later. First, however, it may be helpful to review briefly the common law, the harshness of which necessitated adoption of death acts in England and in this country,

and recent developments in our law touching upon the subject of consortium.

At the early common law, although a woman could not sue for damages for loss of her husband's consortium caused by his negligent injury, her husband could maintain an action for such damages if she were the victim. See *Montgomery* v. *Stephan, supra*. But even the husband's right to damages abated upon the wife's death from such injuries, *Baker* v. *Bolton* (1808), 1 Campb 493 (170 Eng Rep 1033), a result compelled by the ancient common law's insistence that no civil action could be maintained for the death of a human being caused by the wrongful act or negligence of another. *Higgins* v. *Butcher* (1606), Yelv 89 (80 Eng Rep 61). We need not explore the reasons for this rule, for they were carefully analyzed by Mr. Justice CHRISTIANCY in *Hyatt* v. *Adams,* 16 Mich 180.

From such a background of manifest injustice came the enactment of Lord Campbell's act, 9 and 10 Vict, ch 93, in England in 1846. By that act damages for injuries resulting from death caused by wrongful act of negligence were allowed to be recovered at law by the executor or administrator of the decedent for the benefit of the wife, husband, parent, or child of the decedent.

American States, including Michigan in 1848, enacted similar statutes. Currently, our statute, PA 1848, No 38, as amended (CL 1948, § 691.581 *et seq.* [Stat Ann 1959 Cum Supp § 27.711 *et seq.*]), allows recovery of damages for the pain and suffering of the decedent, for the medical, hospital, funeral, and burial expenses for which the estate is liable and for "the pecuniary injury resulting from such death" to decedent's surviving spouse and next of kin.

Thus in Michigan, by statute, the ancient common law has been modified so that an action now can be maintained for the death of a human being caused by

the wrongful act or negligence of another. With respect to a surviving spouse's right to recover damages in such statutory action, it is limited to his or her "pecuniary injury resulting from such death."

As noted above, in determining what are a surviving spouse's pecuniary injuries, many courts, including our own (*In re Olney's Estate*, 309 Mich 65, 84), have construed such statutory language to limit recovery for their benefit to damages for the loss of a wife's services or of a husband's support. To repeat, the theory, often expressed, is that other injuries to the surviving spouse, such as the loss of a husband's or wife's society and companionship (which, together with their services in the marital relation, we call their consortium), are considered not susceptible of pecuniary valuation and, therefore, their loss is not allowed to be recompensed in money.

The net result of all of this has been that surviving husbands and wives are entitled to recompense for losses resulting from the wrongful death of their spouses but only for some, but not all, of the elements of loss for which a husband could recover, at common law, when his wife was negligently injured by another. In other words, common-law juries in many jurisdictions are considered fully competent to measure a husband's loss of the consortium of his injured wife,—all elements of such loss,—but those same jurors, when hearing a death case brought under a wrongful death statute, are considered incapable of evaluating the pecuniary injury done to a wife or even to a husband by loss of the spouse's consortium made permanent by wrongful death.

This was not so in Michigan, however, where the virtue of consistency prevailed for many years, perhaps at the expense of justice. For in Michigan, until 1960, neither the husband nor the wife could sue at common law for loss of consortium resulting from the spouse's negligent injury by another. *Blair* v.

*Seitner Dry Goods Co.,* 184 Mich 304, 314 (LRA 1915D, 524, Ann Cas 1916C, 882). Prior to 1960, we recognized no common-law right of either spouse to recover damages for loss of consortium where death did not result from another's negligence or wrongful act; where death did result, by statute and judicial construction we permitted a surviving husband to recover for loss of his wife's services and a surviving wife to recover for loss of her husband's support, but for nothing more.

In 1960, however, we finally acknowledged that loss of a spouse's consortium can be measured by a jury in a common-law action for negligence not resulting in death and that a wife's loss thereof can be recompensed in money damages. *Montgomery* v. *Stephan, supra.* The question now is, should we acknowledge that the same loss of consortium, differing only in degree because death has made it permanent, can be recompensed likewise where damages are sought under the statute for wrongful death? That question is ours to answer as well as the legislature's, for nothing yet in the wrongful death act, except as we construe it, bars recovery for such losses. The legislature has not said that a surviving spouse may not be recompensed in damages for loss of the society or companionship of a husband or wife wrongfully killed by another; this Court said so because we once believed such damages could not be measured judicially. Now, since *Montgomery* v. *Stephan, supra,* we know that they can, just as has been done for centuries by judges and juries in other jurisdictions in actions for criminal conversation and alienation of affections, pp 43, 44. Since such losses now can be measured at common law in this State in actions for negligence where death does not occur, I see no reason to continue to insist that they cannot be measured in actions under our statute where death

does occur,—the only difference between the losses being one of degree.

There is precedent from other jurisdictions, as well as the logic of consistency, to support the conclusion that damages may be recovered in behalf of a surviving spouse in a death action for the pecuniary value of the loss of such noneconomic interests of a marriage as are known within the concept of consortium. See *Beeson* v. *Green Mountain Gold Mining Co.* (1880), 57 Cal 20; *Newton* v. *Thomas* (1955, 1956), 137 Cal App 2d 748, 769 (291 P2d 503, 516); *Spangler* v. *Helm's New York-Pittsburgh Motor Express* (1959), 396 Pa 482 (153 A2d 490); *Vines* v. *Arkansas Power & Light Co.* (1960), 232 Ark 173 (337 SW2d 722); *Continental Bus System, Inc.*, v. *Toombs* (Tex Civ App 1959), 325 SW2d 153, 167; *Nichols* v. *United States Fidelity & Guaranty Co.* (1961), 13 Wis2d 491 (109 NW2d 131); *Johnson* v. *Charleston & Western Carolina R. Co.* (1959), 234 SC 448 (108 SE2d 777); *Complete Auto Transit, Inc.*, v. *Floyd* (CCA 5, 1958), 249 F2d 396, relying upon *Blue's Truck Line, Inc.*, v. *Harwell* (1938), 59 Ga App 305, 310 (200 SE 500, 502); *Hall* v. *Gillins* (1958), 13 Ill2d 26 (147 NE2d 352); and *Moss* v. *Hirzel Canning Co.* (1955), 100 Ohio App 509 (137 NE2d 440). There are other cases, many others. See West's General Digest (3d ser) and its 6 decennial digests under the heading Death, § 88. See, also, 74 ALR 11, particularly § VI b, at p 72 *et seq.*, and supplements.

It is my belief that we should now candidly announce that the obstacle to judicial ascertainment of such damages no longer exists in actions under the statute any more than it does in actions for common-law negligence. Once, long ago, this Court might well have been justified in judicially limiting the statutory language of "pecuniary injury" to preclude recovery of damages for death-induced loss of a spouse's consortium because it was believed such

damages were incapable of judicial ascertainment.
Now, however, in the absence of other rational basis
for relieving a death-dealing wrongdoer of the con-
sequences of his acts, we must either allow recovery
of damages for a surviving spouse's loss of con-
sortium, the evidentiary bar being no longer an ob-
stacle in death cases any more than it is in mere
injury cases, or we must perpetuate this injustice by
reliance upon what we all must recognize as a bare
legal fiction of judicial impotence.  I would let the
financial burden rest upon him who causes provable
loss to fully effectuate a permissible policy of the
legislature to preserve human life "by making homi-
cide expensive."  *Western & Atlantic R. Co.* v.
*Michael* (1932), 175 Ga 1, 13 (165 SE 37, 42).

Subject to the foregoing, I concur in affirmance.

KAVANAGH, OTIS M. SMITH, and ADAMS, JJ., con-
curred with SOURIS, J.